### Case No. 4,679.

FARRAR v. WALKER et al.

[13 N. B. R. 82;[1] 3 Dill. 506, note; 1 N. Y. Wkly. Dig. 229; 2 Cent. Law J. 670.]

Circuit Court, E. D. Missouri. Oct. 15, 1875.

[1] [Reprinted from 13 N. B. R. 82, by permission.]

Henderson & Shields, for complainant.
Wm. R. Walker, for defendants.

MILLER, Circuit Justice. This is a suit brought by the plaintiff, who was a stockholder in the North Missouri Insurance Company, to get rid of the payment of a note for one thousand dollars, which he had given in the purchase of stock. Mr. Farrar took stock in the company, and gave this note in payment for that stock, secured by deed of trust on real estate. Two years after the giving of the note, the North Missouri Insurance Company failed, and was put in bankruptcy, and Mr. Walker was appointed assignee of the company, and being about to enforce that obligation for the benefit of the creditors, Mr. Farrar files his bill in the district court in chancery, seeking to enjoin the sale of the mortgaged property, or rather the property conveyed by the deed of trust, which was about to be foreclosed. In that way he brings the proceeding into court to declare the note null and void, and he makes on his bill undoubtedly a case of fraudulent conduct on the part of the board of directors, or the officers of the insurance company— the whole of them—in publishing and representing to him very fraudulently and very falsely, that the insurance company was on its feet, in a prosperous condition; had a large amount of valuable assets beyond its liabilities, and that it was a good thing to take its stock; whereas he alleges that was false, and that the company was then insolvent, that these men knew it, and that he was defrauded in becoming a stockholder. We may say at the beginning, and the authorities on this point are clear, that if the corporation was still in existence, and was solvent and doing business, and suit was brought upon that instrument, Mr. Farrar could have pleaded these things in avoidance of that conveyance, and they could not have enforced it against him. But things are changed; the corporation has become bankrupt; it has no interest whatever in this conveyance, because, whether enforced or not, the corporation is dead, will not exist as an entity again, and will never receive a dollar of this money. It is now a question between the creditors of that corporation who are represented by Mr. Walker, the assignee, and a

stockholder, who is indebted to the corporation for its stock, and while my first impressions were pretty strong against the idea that this liability could be enforced under such circumstances, and I was very much inclined to overrule the demurrer, and require the parties to answer and let all the facts be shown on a final hearing, due consideration has changed my mind on the subject, and compels me to the conclusion that the bill must be dismissed, and that is this: That the paper, as it stands, admitting the fraud and everything, is not of that class of paper which is absolutely void, but is a paper, or contract, or obligation, which was voidable at the option of Mr. Farrar. He could, notwithstanding the fraud, hold on to the stock and take the chances of its becoming valuable; or he could say, if he chose, "I don't think it is worth the trouble to go into a fight to avoid this obligation." In other words, it was his option to avoid that contract or stand by its legal results, and if this failure had occurred within two, three, or even four months after he took the stock and became a stockholder in the company, I should be inclined to say that he had not had a reasonable time in which to examine into the affairs of the company, and see whether he had been defrauded; and that he had still remaining his option, even after the bankruptcy of the company and the appointment of an assignee, to move to set aside that conveyance, if he could show that it was fraudulent. But the business of these corporations is so managed in this country, that justice requires, at all events, that if one of its stockholders should make this paper and obligation, secured by real estate, which goes into the hands of the officers as so much assets of the corporation, and is paraded before the public as an asset, and he stands up for two years and lets that note and obligation of his, secured by real estate, be counted every year, or in every semi-annual statement that is made to the public, as so much cash, which the creditors of that company may look to to cover their losses—then it is too late, the lapse is too long to allow the fraud to be pleaded. Mr. Farrar was for two years a stockholder in that corporation; he had a right to access to all its books, and to vote for its directors; it was his duty to interest himself in its management so far as to see that what it said was true; that its directors were honest; that he should use his influence to get honest men in, and yet during these two years he stands up and does nothing, makes no inquiry, no investigation. It is too late when the creditors pursue the corporation into bankruptcy, and the assignee pursues him for his note, to turn around and say, "I find out that I was swindled; I was there two years and I might have found it out and not let everybody trade on my note deposited there, but I was cheated, and I now rescind this contract." On that ground alone the bill comes too late, and the demurrer to the bill was properly sustained in the district court.

The judgment of the district court is affirmed.