Pardee, Circuit Judge.
This is an appeal from a decree dismissing the complainant’s bill. The facts stated in the bill and exhibits thereto, and admitted by demurrer, briefly stated, are as follows: Appellant was the owner of about 104,819 acres of land in the county of Volusia, state of Florida, and at or about December 29, 1890, W. J. Winegar, one of the appellees, purchased said lands, paying at the time of purchase all the price except $21,409.56, to secure which said Winegar was, according to the contract, to execute to appellant his promissory note secured by mortgage on said lands. Shortly after the contract of sale Winegar proposed to appellant to pay part of said balance of purchase money in the stock of the First National Bank of Palatka, Florida, of which said bank said Winegar was at that time and has ever since been president. Appellant, not being acquainted with the condition of said bank, requested Winegar as president to make a statement of its condition. The officers of the appellant company, the Florida Land & Improvement Company, resided in the city of Philadelphia, and had no means of knowing the condition of said bank except from the statements made by said Winegar. In reply Winegar wrote a letter, (Exhibit B of the amended bill of complaint,) saying the paid-up capital of the bank was $150,000, with a present surplus of $23,600, and deposits to the amount of $250,000; and further saying th'at the dividends during the year 1890 were 7 per cent., and that it was expected that the next dividend would be at the rate of 5 per cent, for the half year, in order to bring up the average to 8 per cent, for last year, and that the present value of the stock was about from $115 to $120. These statements were false, and Winegar knew at the time of making them that they were false, and said bank was at that time utterly and hopelessly insolvent. Appellant, relying upon the statement of the said Winegar, president of said bank, accepted 100 shares of stock at $115 per share, and took a mortgage for the balance of the purchase money, $9,909.56, on the lands mentioned. This mortgage has been paid and satisfied. At or about the time of accepting the stock of said bank, ap *79 pellant executed and delivered to said Winegar a good and sufficient deed of conveyance of the lands mentioned.
Winegar, soon after these lands were conveyed to him, organized the defendant company, the Florida Land & Lumber Company, of which company he became and still is the president. To this company Wine-gar conveyed the lands mentioned, and the Florida Land & Lumber Company then issued a series of bonds, to the amount of about $108,-400, par value, secured by a mortgage or deed of trust on said lands, said mortgage or deed of trust being given to the Manhattan Trust Company as trustee for the bondholders. The Manhattan Trust Company, though made defendant, has never been served with process, or otherwise brought into court. These bonds were given to Winegar in payment for the lands, and also a large quantity of capital stock of said defendant company was given to him. All, or nearly all, of the bonds and stock mentioned were delivered to the First National Bank of Palatka, in consideration only of past indebtedness of the said Winegar to the said bank, and no new consideration was paid by said bank for said bonds; and the bill charges said bank with full notice of the fraud practiced on appellant by said Winegar in imposing said worthless stock upon it; and also charges the receiver and all creditors and stockholders of the bank with full notice of said fraud. The Florida Land & Lumber Company, to whom said Winegar conveyed these lands, is also charged with full notice of said fraud through its president, Winegar. • The bill further charges that the said shares of stock of the First National Bank of Palatka sold to Winegar by appellant were, at the time they were sold and delivered, the property of the bank; and that the said Winegar delivered the same for the benefit of the bank, and in order to obtain an appearance of assets for the said bank which, as before said, was totally insolvent.
The First National Bank of Palatka was declared insolvent on July 17,1891, about six months after the making of the statement contained in Exhibit B, and the defendant T. B. Merrill was appointed receiver of the same on the-day of August, 1891. The receiver has in his possession the bonds and stock above referred to, and claims to be entitled to payment of said bonds before appellant is satisfied for the balance of the purchase price of said lands. The bill shows that the officers of the appellant company were not informed and knew nothing of the condition of the said bank until within a very short time before the filing of its bill of complaint. Appellant claims, on the state of facts set forth in the bill, to be entitled in equity to a vendor’s lien on the lands conveyed to Winegar, superior to the claims of holders of bonds issued by the Florida Land & Lumber Company, for the balance of said purchase money due for said lands, and, as incidental to this relief, it asks that Merrill, as receiver of the bank, be restrained from selling, or in any wise disposing of, said bonds. Appellant further asks that said receiver be enjoined from levying or collecting any assessment on said bank stock, as against appellant. Alternative relief is also prayed in the bill, if for any reason the particular relief as mentioned should not *80 be proper. Defendants T. B. Merrill, as receiver, etc., the First National Bank of Palatka, and W. J. Winegar demurred to the bill on the general ground that there was no equity in it, and, on hearing, this demurrer was sustained, and a decree dismissing the bill was entered.
On the facts as stated, all admitted by the demurrer, the appellant has been defrauded of a property right, and is entitled to relief, unless, in the mean time, the rights of innocent third parties have intervened. The learned judge presiding in the circuit court gave no reasons in writing for his decision, and we are left to infer what they may have been. It is suggested in the briefs that the court held that, by the declaration of insolvency of the bank and the appointment of a receiver, the rights of innocent third parties, to wit, creditors of the bank, have intervened; and that as the receiver represents the creditors of the bank as well as the bank, although it did not appear that there were any creditors of the bank who had given credit to it on the faith of the bonds issued on the lands in controversy, yet the court would infer from the fact that the receiver had been appointed that there .were creditors of the bank who were prior in equity to the appellant. As it is admitted that the bank stock, when fraudulently sold and delivered to the appellant, was the property of the bank, and that the proceeds of the fraudulent sale were at once turned over to the bank, and are now held by the receiver as the property of the bank, we do not understand how it can be that any creditor of the bank can have such an interest as would prevent restitution. The receiver representing creditors has only the rights of property possessed by the bank. It does not appear, nor it is to be inferred, that the receiver or the creditors of the bank have parted with anything of value upon the faith of the bonds fraudulently held by the bank, and to allow the receiver, on the theory that there may be some bona fide creditor of the bank, to retain the proceeds of the fraudulent sale, would be to give the creditors of the bank the fruits of a gross fraud, which, by taking and holding, would make them particeps criminis. 1 Story, Eq. Jur. 193a; Kerr, Fraud & M. 233.
Counsel for appellees contends in this court “that the capital stock of an incorporated company is a fund set apart for the payment of its debts;” citing Sanger v. Upton, 91 U. S. 56. And he says further:
“Under this principle the interests of the insolvent bank and its stockholders are secondary and contingent. They have no interest until the last obligation of the bank to its creditors shall have been fully discharged. After the payment of all debts they are entitled to the residuum. The creditors are interested parties, and under the circumstances the bill should allege that they had notice of the alleged fraud, and that the credit was not extended upon the faith of the bonds in question, nor upon the faith of appellant being a stockholder. Fraudulent misrepresentations of the officers of a bank made to stockholders at the time of purchase constitute no defense after its insolvency, and the appointment of a receiver.”
Citing Benj. Sales, par. -709; Kerr, Fraud & M. pp. 48, 49; Ogilvie v. Insurance Co., 22 How. 380; Upton v. Tribilcock, 91 U. S. 45; Farrar v. Walker, 3 Dill. 506, and note; Upton v. Englehart, Id., 496; Dujfield v. Barnum, (Mich.) 31 N. W. Rep. 310; Moore v. Jones, 3 Woods, 53.
*81 In our opinion these arguments and authorities do not apply in this case. This is not a case of subscription to the capital stock of an incorporated company, nor a case of transfer of stock by an ordinary stockholder, but it is a case where the bank as an actor made a fraudulent sale of its own stock, and now by its receiver holds the proceeds thus acquired. In other words, the receiver of the bank holds property that does not belong to the bank, to which neither he as receiver nor the creditors of the bank are entitled in equity and good conscience.
Further than this, on counsel’s theory of the bill that the stock sold was Winegar’s, and not the bank’s, it is to be noticed that the scope of the bill covers two distinct subjects for equitable relief,—the one being to restore the appellant to the equitable right of which it has been divested, the other to protection from assessments and charges as a stockholder in the First National Bank of Palatka; appellant may be entitled to the one and not to the other. To withhold from the demands of the creditors of the bank property fraudulently acquired by the bank does not necessarily require a denial of an assessment on the stock of the bank, if necessary to pay debts. And in this view of the case we are clearly of the opinion that appellant is entitled to a rescission of the sale of stock in question, as against Winegar, the Florida Land & Improvement Company, and the First National Bank of Palatka; and also as against the receiver of the bank, at least so far as to restore to appellant the vendor’s lien upon the lands described in the bill for the amount of the purchase price still unpaid, leaving the receiver to collect assessments on stock from such stockholders as under the law may be liable. Considering, however, as we do, that the bill charges and the demurrer admits that the bank was the real vendor of the stock, we think that in equity the appellant is entitled to have a complete rescission of the fraudulent transaction complained of. The decree sustaining the demurrer and dismissing the bill should be reversed; and it- is so ordered.