MERRILL v. FLORIDA LAND & IMP. CO.

(Circuit Court of Appeals, Fifth Circuit. December 12, 1893.)

No. 189.

1. SALE—FRAUDULENT REPRESENTATIONS—BANK STOCK.
    An intending purchaser of bank stock is entitled to rely upon a statement of its president as to the bank's condition, without inquiring further.
2. SAME—RESCISSION AS AGAINST A BANK—RIGHTS OF CREDITORS.
    The receipt by a bank of the proceeds of a fraudulent sale of stock belonging to it, and the subsequent appointment of a receiver, give its

creditors no such right in the proceeds as will prevent the purchaser from rescinding the sale and requiring restitution. 52 Fed. 77, 2 C. C. A. 629, 2 U. S. App. 434, reaffirmed.

Appeal from the Circuit Court of the United States for the Northern District of Florida.

In Equity. This is a suit by the Florida Land & Improvement Company against T. B. Merrill, as receiver of the First National Bank of Palatka, Fla., the Florida Land & Lumber Company, the Manhattan Trust Company, and William J. Winegar for the rescission of an alleged fraudulent sale of bank stock. The bill was originally dismissed on demurrer by the court below, but, on an appeal to this court, the decree was reversed. 2 C. C. A. 629, 52 Fed. 77. The case was then heard on the merits, and a decree entered granting the relief prayed, from which the defendant Merrill appeals. The decree is now affirmed.

J. W. Stripling, for appellant.

H. Bisbee, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge. This cause was before this court at the former term on appeal from a decree sustaining a demurrer to the bill of complaint and dismissing the bill, and it was then held that the matters averred in the bill, taken as truly stated, entitled the complainant to relief. 2 U. S. App. 434, 2 C. C. A. 629, 52 Fed. 77. The cause, when returned to the circuit court, was put at issue on what purports to be the joint and several answer of T. B. Merrill, receiver, W. J. Winegar, and the Florida Land & Lumber Company. It will be noticed, with regard to this answer, that the Florida Land & Lumber Company did not sign the answer, nor was its seal attached thereto, or oath made to it by any of its officers, and that, while this answer purports to be the joint and several answer of all the defendants, it is doubtful whether it should be considered other than the answer of T. B. Merrill, receiver. The Manhattan Trust Company filed its former answer, but, under the developments of the case, this trust company became, practically, an unnecessary party.

On filing the mandate of this court remanding the case to the court below for further proceedings, an injunction against T. B. Merrill, as receiver, enjoining him from disposing in any manner of the bonds of the Florida Land & Lumber Company in his possession, was reinstated, and he was thereby prevented from making any sale of the bonds; but, in the order of injunction referred to, it was provided that if, at any time, he should deposit a sufficient sum of money in the registry of the court to cover any decree which might be rendered in favor of the complainant, then such injunction should be dissolved. In accordance with this provision, by agreement of the parties, the receiver, desiring to make sale of the bonds, deposited in the registry of the court the sum of $15,260, and thereupon the order was entered, by agreement of the

parties, dismissing the Florida Land & Lumber Company from the case, and providing that any decree for the complainant should be satisfied out of the moneys so deposited. The cause being fully at issue by replication to the alleged answer, testimony was taken, and the cause submitted to the court for final hearing. From a decree giving the complainant all the relief prayed in his bill, Merrill, receiver, has taken this appeal. The errors assigned are as follows:

"First. That the court erred in rendering a decree in favor of the complainant, and against said defendant.

"Second. That the court erred in refusing to render a decree in favor of the defendant, and dismissing the complainant's bill.

"Third. That the court erred in decreeing that the complainant has a vendor's lien on all of the lands described in the bill of complaint for the balance of purchase money, viz. $11,500, together with interest at 8 per cent. per annum from the 29th day of December, 1890.

"Fourth. That the court erred in decreeing that the complainant be paid the sum of $13,743.78 out of the moneys deposited in the registry of the court by the defendant Merrill.

"Fifth. That the court erred in decreeing that the complainant be relieved from any and all liability for assessment made, or to be made, on one hundred shares of stock, and that the said Merrill, as receiver as aforesaid, and his successors, be enjoined from collecting or enforcing from the complainant any assessment made or to be made on said one hundred shares of stock."

The learned counsel for appellant, in presenting his case, resolves these errors into two general questions stated by him, as follows:

"First. That the court erred in decreeing a rescission of the contract relating to the bank stock and lien upon the lands, and in requiring the payment of the $11,500 and interest out of the funds deposited by the appellant in the registry of the court.

"Second. That the court erred in enjoining the collection of the assessment against the appellee on the shares of stock held by it, and in not denying the relief prayed, and dismissing the bill."

The evidence adduced on the trial in the court below, and brought up in the record, fully sustains the allegations of the bill. In regard to the matter of the ownership of the shares of bank stock which were transferred to the complainant, and made a part of the consideration given for the large property rights acquired from the complainant, the showing is not as clear as in other matters, but that we consider as the fault of the appellant, and resolve the matter accordingly. From the answer it appears that 60 shares of the said stock belonged to the bank, leaving it in doubt as to who was the owner of the remaining 40 shares. The testimony of Winegar, president of the bank, shows that the remaining 40 shares belonged, prior to the transaction, 30 to him and 10 to a Mr. Mersereau, but were acquired by the bank to complete the transaction with the complainant, credit being given on the books of the bank to pay for the same. As to the fraudulent representations alleged, the evidence is clear and conclusive. While it was true that the bank, on January 6, 1891, had a paid-up capital of $150,000, and had deposits to the amount of $250,000, and, further, had paid the

previous dividends as alleged, it was not true that the bank had a surplus of $23,600, or any actual surplus. The fact was that, on paper, the bank had an excess of assets over liabilities of between thirteen and fourteen thousand dollars, but really, while the bank was not insolvent, by reason of bad investments its capital stock was largely impaired. The evidence further shows that the representations complained of were made by the president of the bank, who was, or ought to have been, in full possession of all the facts in the case. The learned counsel for the appellant contends that the appellee had no right to rely upon the representations of the president of the bank, but should have instituted an inquiry in other directions, and that the representations with regard to the assets of the bank should have been inquired into through other sources, and that the appellee should have informed himself as to who were the debtors of the bank, how the moneys of the bank were invested, etc.

In this view we cannot concur. The information with regard to the business of the bank was peculiarly within the control and knowledge of the president, and for information as to its condition the appellee was not required to look further. In giving our former decision we said:

"On the facts as stated, all admitted by the demurrer, the appellant has been defrauded of a property right, and is entitled to relief, unless, in the mean time, the rights of innocent third parties have intervened. The learned judge presiding in the circuit court gave no reasons in writing for his decision, and we are left to infer what they may have been. It is suggested in the briefs that the court held that, by the declaration of insolvency of the bank and the appointment of a receiver, the rights of innocent third parties, to wit, creditors of the bank, have intervened, and that, as the receiver represents the creditors of the bank as well as the bank, although it did not appear that there were any creditors of the bank who had given credit to it on the faith of the bonds issued on the lands in controversy, yet the court would infer, from the fact that the receiver had been appointed, that there were creditors of the bank who were prior in equity to the appellant. As it is admitted that the bank stock, when fraudulently sold and delivered to the appellant, was the property of the bank, and that the proceeds of the fraudulent sale were at once turned over to the bank, and are now held by the receiver as the property of the bank, we do not understand how it can be that any creditor of the bank can have such an interest as would prevent restitution. The receiver, representing creditors, has only the rights of property possessed by the bank. It does not appear, nor is it to be inferred, that the receiver or the creditors of the bank have parted with anything of value upon the faith of the bonds fraudulently held by the bank; and to allow the receiver, on the theory that there may be some bona fide creditor of the bank, to retain the proceeds of the fraudulent sale would be to give the creditors of the bank the fruits of a gross fraud, which, by taking and holding, would make them particeps criminis. 1 Story, Eq. Jur. 193a; Kerr, Fraud & M. 233. Counsel for appellees contends in this court 'that the capital stock of an incorporated company is a fund set apart for the payment of its debts;' citing Sanger v. Upton, 91 U. S. 56. And he says, further: 'Under this principle the interests of the insolvent bank and its stockholders are secondary and contingent. They have no interest until the last obligation of the bank to its creditors shall have been fully discharged. After the payment of all debts they are entitled to the residuum. The creditors are interested parties, and, under the circumstances, the bill should allege that they had notice of the alleged fraud, and that the credit was not extended upon the faith of the bonds in question, nor upon the faith of appellant being a stock-

holder. Fraudulent misrepresentations of the officers of a bank, made to stockholders at the time of purchase, constitute no defense after its insolvency, and the appointment of a receiver.' Citing Benj. Sales, par 709; Kerr, Fraud & M. pp. 48, 49; Ogilvie v. Insurance Co., 22 How. 380; Upton v. Tribilcock, 91 U. S. 45; Farrar v. Walker, 3 Dill. 506, Fed. Cas. No. 4,679, and note; Upton v. Englehart, 3 Dill. 496, Fed. Cas. No. 16,800; Duffield v. Iron Works, (Mich.) 31 N. W. 310; Moore v. Jones, 3 Woods, 53, Fed. Cas. No. 9,769. In our opinion, these arguments and authorities do not apply in this case. This is not a case of subscription to the capital stock of an incorporated company, nor a case of transfer of stock by an ordinary stockholder, but it is a case where the bank, as an actor, made a fraudulent sale of its own stock, and now, by its receiver, holds the proceeds thus acquired. In other words, the receiver of the bank holds property that does not belong to the bank, to which neither he as receiver nor the creditors of the bank are entitled in equity and good conscience. * * * Considering, however, as we do, that the bill charges, and the demurrer admits, that the bank was the real vendor of the stock, we think that, in equity. the appellant is entitled to have a complete rescission of the fraudulent transaction complained of."

As counsel for appellant gives us no new authority nor well-grounded argument to the contrary, we still adhere to these views, and, as they control the case, it follows that the decree appealed from must be affirmed with costs, and it is so ordered.