[Civ. No. 995.    First Appellate District.—July 12, 1912.]

THE PEOPLE, by U. S. WEBB, Attorney General, Plaintiff, v. CALIFORNIA SAFE DEPOSIT AND TRUST COMPANY, a Corporation, et al., Defendants. O. M. GOLDARACENA, Intervenor, Appellant, v. EDWARD J. LE BRETON, Receiver, etc., Respondent.

CORPORATIONS—SUBSCRIPTION TO STOCK PROCURED BY FRAUD—RESCISSION UPON DISCOVERY OF INSOLVENCY — DEMURRER TO COMPLAINT IMPROPERLY SUSTAINED.—In an action to rescind a subscription to the stock of a banking corporation procured by its fraud in stating that the bank was in a flourishing condition, where the complaint alleges that the contrary was not discovered until after its adjudication in insolvency, and that, upon such discovery, notice of rescission was given to the receiver of the insolvent bank, in whose hands the money paid for such stock could be readily traced, which was given twenty-three days after such adjudication, and it appears that the action was commenced within two months thereafter, it states a cause of action, and a demurrer to the complaint was improperly sustained.

ID.—RULE AS TO RIGHT OF RESCISSION FOR FRAUD AFTER INSOLVENCY.— It is a rule sustained by authority that a subscription to stock induced by fraud may be rescinded after, as well as before, the corporation ceased to be a going concern, where no considerable time

has elapsed since the subscription, and no want of diligence appears in the discovery of the fraud, and the existence of the fraud is clear.

ID.—ADMISSION OF PLEADINGS—FRAUD ON CREDITORS OF BANK NOT INVOLVED —PROCEEDS OF FRAUDULENT SALE NOT PROPERTY OF BANK.— As it is admitted by the demurrer to the complaint that the bank stock subscribed was the property of the bank, and that the proceeds of the sale alleged to have been fraudulent were turned over to the bank and may be identified, it cannot be held that the creditors of the bank have any such an interest as would prevent restitution thereof from the receiver. Though the receiver represents the rights of the creditors of the bank in its property, he does not represent, and cannot retain, the proceeds of a fraudulent sale which do not belong to the bank, and which may be recovered by the plaintiff rescinding such sale as fraudulent.

ID.—QUESTION OF LACHES — PLEADING — PROOF.—Where laches appears in pleading or in proof, it is a bar to equitable relief; but where, as here, it is alleged that the insolvency of the bank was not known to the plaintiff appealing until after the bank had closed its doors, and that its officers had repeatedly, and up to that time, represented the flourishing condition of the bank, it cannot be said that the intervening time between the purchase of the stock and the insolvency of the bank is in itself such a period as would constitute laches. If any facts exist showing it, they should be presented by answer and proof. It is held that the complaint does not state such facts as would bar the right of rescission, nor do the facts alleged show that he has been guilty of laches.

ID.—RESCISSION FOR FRAUD—DILIGENCE IN DISCOVERY—PLEADING—EXCUSE FOR DELAY SHOWN—OPINION OF SUPREME COURT ON DENYING REHEARING.—It is held by the supreme court, in denying a rehearing after decision of this case in the district court of appeal, that while this court is in doubt concerning that part of the opinion which seems to imply that in an action for rescission it is unnecessary for the complaint to state facts showing reasonable diligence to discover the facts constituting the fraud, on account of which the rescission is asked, still the facts alleged in the petition of appellant for intervention in this case are sufficient to excuse him for the delay in making such discovery.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

William M. Cannon, for Appellant.

J. V. De Laveaga, and E. De Los Magee, for Respondent.

KERRIGAN, J.—This is an appeal from a judgment on demurrer denying appellant's petition of intervention, by which he sought to have the receiver in the above-entitled action decreed to hold the sum of $12,000 in trust for him, and that the receiver be required to pay him that amount.

The petition sets forth the fact of the insolvency of the California Safe Deposit and Trust Company, the appointment of E. J. Le Breton as receiver, and his possession of its assets, and as a cause of action recites that petitioner, on the twentieth day of September, 1906, was asked, through the officers and agents of the California Safe Deposit and Trust Company, to purchase from said corporation 100 shares of its capital stock, and that said agents and officers then and there made statements to the petitioner concerning such stock, which statements and representations were knowingly false and untrue and were made for the purpose and with the intent of deceiving, defrauding and tricking the petitioner into subscribing for and purchasing the said capital stock, and the petitioner relying upon the said statements and representations, and believing the same to be true, was thereby induced to and did purchase the said 100 shares of said capital stock, and paid therefor the sum of $12,000, in full reliance upon said statements and representations; that at said time the bank was insolvent.

The petition further sets forth that petitioner did not know at the time of said purchase that the said bank was insolvent or that said statements and representations were untrue, and did not learn of the insolvent condition of said bank nor of the falsity of said statements and representations until said bank was adjudged to be insolvent on or about the fourteenth day of January, 1908, and then alleges that petitioner was unable to ascertain such condition at an earlier date.

The petition also recites a rescission of the fraudulent transaction on the fifth day of February, 1908, the deposit of the purchase price of $12,000 in the vaults of said defendant corporation, and that that sum was in the possession and under the control of the defendant and in its vaults continuously from the time of such payment until the assets of said corporation were taken charge of by its receiver under legal proceedings, and that the same can be traced and identified as the identical money of the petitioner.

The demurrer of the receiver to the petition was sustained, the petition denied and dismissed, and from the judgment entered in pursuance of said order this appeal is prosecuted.

The proceeding, therefore, is in the usual form of a complaint predicated upon a rescission of a contract upon the ground of fraud.

As hereinbefore stated, notice of rescission was given on the fifth day of February, 1908, and this action was commenced in April, 1908. It will thus be seen that the rescission was made and the action commenced subsequent to the adjudication of insolvency of the bank, which was on or about the fourteenth day of January, 1908.

The questions presented to us for determination by this appeal are:

First, where there has been a fraudulent sale of stock by a corporation, may the subscriber have a rescission after the insolvency of the corporation?

And second, Was the petitioner guilty of laches in giving his notice of rescission and in the bringing of this action?

In England, the principle has become well established that after the statutory proceedings for the winding up of a corporation have been commenced, a subscriber cannot rescind his subscription on account of fraud. He is too late. It matters not that he did not discover the fraud until after the proceedings for the winding up of the corporation had been commenced. The right of the corporate creditors prevails then over the equities of the subscriber. (Cook on Corporations, sec. 162.)

In this country this absolute rule does not obtain, and indeed there does not appear to be any fixed rule for claiming a rescission under this condition.. While relief has been denied by the United States supreme court after proceedings in insolvency, the denial is not based upon the sole ground of the insolvency of the corporation. In one of the earlier cases on this subject the right to a rescission was denied upon the ground that the shareholder had been delinquent and had slept on his rights. (*Upton* v. *Tribilcock,* 91 U. S. 45, 55, [23 L. Ed. 203].)

. Some of the American text-writers have declared that corporate insolvency, as a rule, is a bar to such rescission. (Cook

on Corporations, sec. 164; 10 Cyc. 441.)    A close examination of the cases, however, upon which this statement of this principle is based show that the cases cited support no such proposition, and even those authors modify their declaration that subsequent insolvency is a bar to rescission, by the statement that there are strong American cases to the effect that the insolvency of a corporation and the appointment of a receiver do not always *ipso facto* bar the right of a subscriber to rescind his subscription on the ground of fraudulent misrepresentation.    (Cook on Corporations, secs. 164, 167, 170; 10 Cyc. 441 et seq.)

While it may be admitted that there is some conflict of authority on this subject, the majority and best considered cases, where the right to rescind is denied, are not based upon the mere fact of the insolvency of the corporation, but for the reason that the subscriber has participated in the management of the insolvent corporation or for some other particular cause such as would create an estoppel, or some other doctrine analogous to the equitable doctrine of laches.    (See 2 Thompson on Corporations, secs. 1447–1456.)

It would be a matter of supererogation to review all the authorities, but a brief review of the leading cases on the subject, considering the statements of some of the text-writers, will not be amiss.

That it has become the settled rule in England since the decision of *Oakes* v. *Turguand,* L. R. 2 H. L. 325, 344, that a suit to rescind a stock subscription on the ground of fraud cannot be maintained by a stockholder, no matter what diligence he may have shown after proceedings have been taken to liquidate the affairs of a corporation, as has been heretofore stated, cannot be denied.    (Thompson on Corporations, secs. 1439–1441.)    Some of the American cases seem to follow the English rule, and an attempt to harmonize them when all the expressions are considered is attended with some confusion.

The action has arisen under different conditions, as where a subscriber has paid for his stock and repudiates the contract on the ground of fraud and sues to recover the price; again, where the subscriber is sued for the unpaid subscription and defends on the ground of fraud.    Some of the courts have attempted to distinguish these cases on the ground that

different rights arose and that different principles were presented. The question was fully considered in *Newton Nat. Bank* v. *Newbegin*, 74 Fed. 135, [33 L. R. A. 727, 20 C. C. A. 339], where the leading cases dealing with this subject are reviewed, and a conclusion reached that where a considerable time has not elapsed and there is no want of diligence in discovering the fraud, and proof of the alleged fraud is clear, that the stockholder should be permitted to rescind his subscription as well after as before the company ceases to be a going concern. (See, also, dissenting opinion in *Scott* v. *Latimer*, 89 Fed. 859, [33 C. C. A. 1].)

In *Wallace* v. *Bacon*, 86 Fed. 553, where the right to a rescission was denied for the want of diligence, it is distinctly held that a subscription to stock induced by fraud may be rescinded after as well as before the corporation ceased to be a going concern, where no considerable time has elapsed since the subscription and the subscriber has been diligent in discovering the fraud and in taking steps to rescind. And in this case, which was decided in the circuit court of the southern district of California, Ross, J., delivering the opinion, adopted the views expressed in *Newton Nat. Bank* v. *Newbegin*, 74 Fed. 135, [33 L. R. A. 727, 20 C. C. A. 339], on the right to a rescission.

In the case of *Upton* v. *Englehart*, 3 Dill. 496, [Fed. Cas. No. 16,800], Judge Dillon concludes his decision on the subject as follows: "I am inclined to the opinion that if a company has virtually misrepresented or concealed material facts, and thus drawn an innocent person into the purchase of stock, he at the time being guilty of no want of reasonable caution and judgment, and after being guilty of no laches in discovering the fraud, he thereupon, without delay, notifies the company that he repudiates the contract, and offers to rescind the purchase, these facts concurring, I am inclined to the opinion that the bankruptcy of the company subsequently happening will not enable the assignee to insist that the purchase of the stock is binding upon him." And Judge Thompson, in his work on Corporations, commenting upon this decision declares that the tendency of American decisions support this view. (2 Thompson on Corporations, sec. 1449.)

In *Merrill* v. *Florida Land & Improvement Co.*, 60 Fed. 18, [8 C. C. A. 444], and in *Florida Land & Improvement Co.*

v. *Merrill,* 52 Fed. 77, [2 C. C. A. 629], it is held that the receipt by a bank of the proceeds of a fraudulent sale of stock belonging to it and the subsequent appointment of a receiver give its creditors no such right in the proceeds as will prevent the purchaser from rescinding the sale and requiring restitution. In this case it is further said that where it is admitted that the bank's stock when fraudulently sold was the property of the bank, and the proceeds were turned over to the bank, that it cannot be said that any creditor of the bank can have such an interest as would prevent restitution; that the receiver representing the creditors has only the rights of property possessed by the bank and to allow the receiver, on the theory that there may be some *bona fide* creditor of the bank, to retain the proceeds of the fraudulent sale would be to give the creditors of the bank the fruits of a gross fraud which, by taking and holding, would make them *particeps criminis.*

In the case before us it is claimed by respondent that by the declaration of insolvency of the bank and the appointment of the receiver, the rights of innocent third parties, to wit, the creditors of the bank, have intervened, and that as the receiver represents the creditors of the bank as well as the bank, that such creditors are prior in equity to appellant.

As it is admitted by the pleadings that the bank stock was the property of the bank, and that the proceeds of the sale which it is claimed was fraudulent were turned over to the bank, it cannot be said that the creditors have such an interest as would prevent restitution.

The rule might be otherwise if it appeared that a creditor had given credit to the bank on the faith of the sale of this particular stock, but his right would be a personal one, and would not inure to the benefit of all the creditors generally even if it did exist. The receiver, representing the creditors, has only the rights of property possessed by the bank. (*Merrill* v. *Florida Land & Improvement Co.,* 60 Fed. 18, [8 C. C. A. 444].)

As in the case last cited, it is said that it must be remembered that this is a case where the bank, as a creditor, holds the proceeds of the fraudulent sale. In other words, the receiver of the bank holds property that does not belong to the bank, to which neither he, as receiver, nor the creditors of the

bank are entitled in equity or good conscience, assuming that the matters averred are truly stated.

As before stated, the authorities on this subject are numerous and are extensively discussed in the case here cited and further comment upon them would answer no useful purpose. We feel that the leading authorities support the proposition that the mere insolvency of the corporation and the appointment of the receiver do not in themselves bar the appellant's right to a rescission of his contract, considering that the bank was the real owner and vendor of the stock and that appellant was defrauded, which the complaint charges and the demurrer admits, and this being so, petitioner is entitled to have a complete rescission of the fraudulent action complained of, provided he has not been guilty of laches.

And this brings us to the second question. Where a subscriber of stock, who is induced to subscribe by fraud, neglects for an unreasonable time after the discovery of the fraud to have his subscription canceled, and in the meantime the interests of third persons become involved and would be injured by the cancellation of such subscription, the subscriber's laches is a bar to relief, and a court of equity will refuse to set aside such a subscription. (Cook on Corporations, sec. 161.)

Section 1691 of our Civil Code provides that one desiring the rescission of a contract can only accomplish same by rescinding promptly and restoring to the other party everything of value that he has received.

As to whether or not the party seeking a rescission has acted promptly is a matter of fact to be determined by the proof, unless the pleadings on their face show such facts that in themselves constitute laches. Here it is alleged, among other things, that the insolvency of the bank was not known to the appellant until the closing of its doors, and that its officers had repeatedly, and up to that time, made to appellant representations of the flourishing condition of the bank. It cannot be said that the intervening time between the purchase of the stock and the insolvency of the bank is in itself such a period as will constitute laches. This is a matter which can only be determined by proof. There is nothing in the recitals of the complaint showing knowledge on the part of the appellant of the condition of the bank, nor is there any fact from which knowledge could be charged. If any such

facts exist, they should be set up by answer. No such rule can be laid down declaring within what time a rescission must be made, and the decision of each case must necessarily depend upon the facts presented.

The date from which laches begin to run is the time when the subscriber is first chargeable with notice that a fraud has been perpetrated upon him. (1 Cook on Corporations, secs. 162–164.)

In *Newton Nat. Bank* v. *Newbegin,* 74 Fed. 135, [33 L. R. A. 727, 20 C. C. A. 339], where the subscriber purchased his stock in May, 1890, and the bank failed in November, and the subscriber rescinded, and in May, 1891, he filed a bill for that purpose and then withdrew his suit on the proposed reorganization, and then in November, 1891, started the suit again, the court held that under those circumstances the suit might succeed, the subscriber not having taken any part in the management. Other cases of like import will be found in Cook on Corporations, sections 162–164.

It is clear that the complaint in itself does not present such facts as would bar appellant of his right of rescission, nor do the facts as alleged show that he has been guilty of laches.

The order sustaining the demurrer is reversed.

Hall, J., and Lennon, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 10, 1912, and the following opinion then rendered thereon:

THE COURT.—The petition of the receiver for a transfer of this cause from the district court of appeal to the supreme court is denied. We are in doubt concerning the part of the opinion of the district court which seems to imply that in an action for rescission it is unnecessary for the complaint to state facts showing reasonable diligence to discover the facts constituting the fraud on account of which the rescission is asked. But whether this is correct or not, as a rule of pleading, is immaterial to the decision, because in this case the facts alleged by the petitioner in his petition for intervention, but not fully stated in the opinion of the district court, are sufficient to excuse him for the delay in making such discovery.