## JULIAN v. STEWART et al.
### No. 6387.

Circuit Court of Appeals, Fifth Circuit.

Feb. 12, 1932.

M. C. Stewart, of Birmingham, Ala., and W. L. Bryan, of Atlanta, Ga., for appellant.

Douglass Taylor and John J. Sparkman, both of Huntsville, Ala., for appellees.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This is an appeal from a decree in a suit brought by the receiver of a hopelessly insolvent life insurance company to foreclose a mortgage given by appellees in payment of 1,000 shares of the stock, denying foreclosure, and on cross-claim cancelling the mortgage for fraud in the procurement of the stock subscription. The agreed state-

ment of facts on which the case was submitted showed that on June 11, 1928, the company was incorporated with a capital stock of $100,000 represented by 100,000 shares of the par value of $1 each. All of this stock was subscribed for by others than appellees.

On July 14 by amendment to its charter, its capital stock was increased to 300,000 shares of the par value of $1 each. On August 18 the company sold appellees a thousand shares for $5,000, taking in payment the note and mortgage in suit. This transaction appeared on the books of the company "mortgage loans debited, $5000; capital stock credited, $1000 surplus credited, $4000." In October, 1928, the mortgage was filed with the insurance commissioner and deposited by him with the treasurer of the state of Alabama as a part of the securities required of that company as a domestic life insurance company under the provisions of sections 8357 and 8367 of the Code, and there it remained until delivered by the treasurer to the receiver. After its incorporation, and until placed in the hands of the receiver, the company carried on a general life insurance business, issuing policies and collecting premiums. It elected a board of directors, who held regular meetings. It held annual stockholders' meetings, one of which Stewart attended and to one of which he sent a proxy. At no time, however, did Stewart make any inquiry as to the truth of the facts on the faith of which he bought the stock, or take any steps to disaffirm or rescind, until after this suit was filed.

Between the giving and filing of the Stewart mortgage and the receiver's suit to foreclose, claims accrued against the corporation in favor of creditors in the amount of more than $425,000, of which over $400,000 represented policy claims. The receiver was appointed in May, 1930; he filed this suit in August, 1930. Appellees first moved to disaffirm the contract and cancel the mortgage by filing their cross-claim in this suit on August 23, 1930. The fraud relied upon was the statement of Wilson, an agent of the insurance company, that: "The capital stock of the Citizens Life Insurance Company would be $500,000 and that it would be paid in cash. That the company had $100,000 in cash put up with the State to protect stockholders, and that it was impossible for them to lose."

The District Court found that these representations were false and fraudulent; that appellees were defrauded thereby into purchasing the stock and executing the mort-

gage; that they had not been guilty of negligence or laches in disaffirming the sale; and that they had a right to rescind the sale and cancel the mortgage.

Appellant urges against the decree that it has failed to give proper weight to the countervailing equities of the creditors arising out of the fact that appellees as stockholders have delayed in discovering and asserting the true facts until rights of creditors have supervened on the faith of their being stockholders, and especially on the faith that the very funds which the decree withdraws from the assets of the company have been publicly placed on deposit to protect policyholders. We think appellant is right.

This is a case in which stockholders of an insurance company, a business generally affected with a public interest (O'Gorman v. Hartford Fire Ins. Co., 282 U. S. 251, 51 S. Ct. 130, 75 L. Ed. 324), who bought and paid for its stock with property thereafter deposited by that company as part of its trust fund for its policyholders (Alabama Code 1923, § 8357; Joyce on Insurance, vol. 5, § 3595; American Casualty Ins. Co.'s Case (Boston Co. v. Mercantile Trust & Deposit Co.) 82 Md. 535, 34 A. 778, 38 L. R. A. 97; Lovell v. St. Louis Mut. Life Ins. Co., 111 U. S. 264, 4 S. Ct. 390, 28 L. Ed. 423), and who, for two years during which time claims of policy creditors aggregating more than $400,000 were accruing, made no effort to ascertain the truth of the representations relied upon, seek now to change their status from that of stockholders to that of creditors, not only as to the corporation but as to its policyholders, and more, to appropriate to their claims as preferred creditors a part of the assets definitely and publicly pledged for the protection of policyholders.

While it is true that it is the American rule that the insolvency of a corporation does not of itself defeat the right of a defrauded stockholder to rescind his stock purchase contract, it is equally true that under that rule after insolvency declared and the appointment of a receiver, a stockholder who has delayed, as appellees have here, in the ascertainment and assertion of his rights, though he may be entitled to rescind as to the corporation, will be disentitled to do so as to the supervening creditors.

This is certainly the rule in Alabama, Stone v. Green, 205 Ala. 381, 87 So. 862, and in the federal courts, Newton National Bank v. Newbegin (C. C. A.) 74 F. 135,

33 L. R. A. 727; In re Morris Bros. (D. C.) 282 F. 670, 671, affirmed (C. C. A.) 293 F. 294; MacNamee v. Bankers' Union (C. C. A.) 25 F.(2d) 614, 616; Upton v. Tribilcock, 91 U. S. 45, 23 L. Ed. 203; Scott v. Abbott (C. C. A.) 160 F. 573; Chubb v. Upton, 95 U. S. 665, 24 L. Ed. 523. We think it is generally conceded to be the rule elsewhere. Black on Rescission, § 352; 7 R. C. L. 214; Gress v. Knight, 135 Ga. 60, 68 S. E. 834, 31 L. R. A. (N. S.) 900; Van Gilder v. Eagleson, 66 Colo. 364, 181 P. 539; Henderson v. Crosby, 156 Minn. 323, 194 N. W. 641; Burleson v. Davis (Tex. Civ. App.) 141 S. W. 559; Mitchell v. Bowles (Tex. Civ. App.) 248 S. W. 459; note 41 A. L. R. 689, where the authorities are generally reviewed.

The facts of this case make it a peculiarly strong one against the claimed right of the stockholders to now change their position. The specific nature of the representations as to the amount of capital stock and the amount of cash deposited visited notice upon appellees that they could, by inquiry, ascertain their truth. Anderson v. Gailey (D. C.) 33 F.(2d) 589. Notwithstanding this fact, Stewart participated as a stockholder in meetings, and though they knew that the company was in the business of and was writing policies of insurance, appellees for two years took no steps to ascertain its true condition, and none to disaffirm until sixty days after a receiver had been appointed.

The Merrill Cases (C. C. A.) 52 F. 77, and (C. C. A.) 60 F. 17, on which appellees rely, are not in point. They were not cases like this, of a subscription to the increase of the capital stock of a life insurance company, and an effort later, as against policy creditors, to rescind the subscription. There the facts were that Merrill had sold a tract of land on a contract reserving a lien for the unpaid purchase price. After the making of the contract he agreed, not to subscribe for the capital stock in a company in the process of forming as here, but to take from the bank, an old and long-established institution, as part payment for the balance, shares of its stock already outstanding. Discovering later that he had been defrauded, he sued, tendering back the stock taken in payment, to reinstate the original purchase contract, and to recover the balance due on the trade. In deciding in his favor the court emphasized these features of the case which differentiate it entirely from the one at bar. Further, we agree with appellant that the mortgage constitutes a trust fund for policyholders beyond the reach of appellees' claim to rescind. The statutes of Alabama, Code 1923, § 8357 provide: "Every life insurance company doing business in Alabama * * * shall be required for better protection of the policy holders, to keep * * * the sum of one hundred thousand dollars invested in bonds and securities * * * or in mortgages on real estate. * * * It shall be the duty of the insurance commissioner, on the application of any such company, to pass upon the value of any other securities belonging to said company, certifying their value to the treasurer, who shall receipt for and hold them, as provided in section 8367." "Such deposit, whether made as a statutory requirement or voluntarily, creates a trust for the benefit of policy holders in case of the insolvency of the company." Joyce on Insurance, vol. 5, § 3595; American Casualty Ins. Co.'s Case (Boston & A. R. Co. v. Mercantile Trust Co.), 82 Md. 535, 34 A. 778, 38 L. R. A. 97; Lovell v. St. Louis Ins. Co., 111 U. S. 264, 4 S. Ct. 390, 28 L. Ed. 423. Whether viewed as an additional fact, making the equities of policy creditors more clearly preponderant over appellees' equities arising from the fraud to change their status from stockholders to preferred creditors, or as constituting a substantive defense to the equitable claim asserted by appellees, the fact that appellees in payment for their stock delivered their mortgage to the company, and the company deposited it under the Alabama laws as security for the policyholders, operates to defeat appellees' right to rescind.

Though then appellees have been defrauded, and nothing which they have done has sufficed to relieve the corporation itself from the consequences of that fraud, because the rights of the policy creditors to have the mortgage foreclosed and applied to their claims are paramount to any which appellees may assert, the decree may not stand. It is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.