C. W. HILL, Receiver of the COMMERCIAL AND SAVINGS BANK, v. J. L. SMATHERS et als.

(Filed 26 May, 1917.)

1. **Banks and Banking—Corporations—Receivers—Stockholders—Individual Liability—Statutes—Assets—Judgments.**

　　Where judgment has been obtained by the receiver of an insolvent banking corporation upon a liability theretofore created against its directors by their resolution to become personally liable for a certain amount of its worthless paper in order to obtain permission from the Corporation Commission to continue its business and pay dividends upon its capital stock, with permission granted the receiver to have execution issued, among other things, if he has "proceeded with the collection and reduction of the assets of such bank, and the same are not sufficient to discharge the obligations of said bank due to creditors and depositors as the same" may be allowed by the court, which judgment was not appealed from: *Held*, by the terms of the judgment the insufficient assets did not include the statutory liability individually placed upon the stockholders to the creditors of the bank (Rev., sec. 235), or require the receiver to collect in all the bank's assets before collecting the obligation assumed by the directors when it then appears that the bank's creditors would not be paid in full.

2. **Banks and Banking—Corporations—Receivers—Shareholders—Individual Liability—"Assets."**

　　The individual liability, created by statute, of the shareholders in a bank, beyond the amount of the stock for which they have subscribed, is

an asset of the corporation available only to the creditors and depositors of the bank (Rev., sec. 235; ch. 25, Laws 1911); and where the directors of a bank have assumed obligation on certain of its worthless paper to so "relieve" the bank that it may continue in business with permission of the Corporation Commission, but upon condition that the bank's "assets" be found insufficient to pay its liabilities, they may not successfully assert that the individual liability of the stockholders were included within the meaning of the word "assets" so used by them.

CIVIL ACTION, tried before *Adams, J.,* at Spring Term, 1917, of CHEROKEE.

This is a motion for leave to issue execution on a judgment rendered in this action as follows:

This cause coming on to be tried before his Honor, B. F. Long, and a jury, upon the issues which, with responses, are as follows:

1. Are the defendants indebted to the receiver, and if so, in what amount? Answer: "Yes, $13,420.50, with interest from 3 April, 1916, on the principal, to wit, $12,000."

2. Did said defendants sign the notes sued on pursuant to the resolution of 4 December, 1911, and with the representation by the Commercial and Savings Bank that same would be signed by their associates, William Griffiths, J. A. Richardson, and D. W. Deweese, so as at least to be binding not only upon these defendants in this action, but also as to the other directors of said bank? Answer: "Yes."

It is, on motion of counsel for the plaintiff, considered and adjudged by the court that the plaintiff C. B. Hill, receiver of the Commercial and Savings Bank of Murphy, have and recover of the defendants J. L. Smathers, C. M. Hickerson, C. M. Wofford, G. W. Candler, S. W. Lovingood, and C. E. Wood the sum of $13,420.50, with interest on $12,000 from 3 April, 1916, until paid, and the costs of this action, to be taxed by the clerk.

It is further considered and adjudged by the court that no execution is to issue on this judgment until the further orders of this court, and that plaintiff has leave to apply at any time for such leave, such application to be made upon not less than five days notice and to either the resident judge of the district or the judge holding the courts of the same, and if, upon such application, it is made to appear to the court that any or either of the defendants are endeavoring to make way with any of their property, or to convey or dispose of the same with intent to hinder, delay, or defeat the plaintiff in collection in any way of this judgment, or upon it being shown to the court that the plaintiff C. B. Hill, receiver of the Commercial and Savings Bank, has proceeded with the collection and reduction to cash of the assets of such bank, and that same are not sufficient to discharge the obligations of said bank due to

creditors and depositors as same have been or may hereafter be allowed by the court, and if, upon such application, it is adjudged by the court that the assets of the said bank are not sufficient for such purpose, then leave to issue execution shall be ordered.

The defendants above named, or any other parties in interest, are to have the right to proceed against W. H. Griffiths, J. A. Richardson, and the estate of D. W. Deweese, deceased, upon the finding of the jury on the second issue submitted to them, as they may be advised, and the said defendants may have notice issued to said named parties and to the personal representatives of D. W. Deweese, deceased, to show cause why they and such representatives should not be subjected to this judgment.

And this cause is retained for further orders.

(Signed)    B. F. LONG,
                  Judge Presiding.

His Honor found the following facts and rendered the following judgment upon the hearing of the motion:

1. That the plaintiff C. B. Hill was duly appointed receiver of the Commercial and Savings Bank, doing business at Murphy, Cherokee County, North Carolina, on 16 March, 1914, said bank at that time being insolvent.

2. That the defendants Smathers, Hickerson, Wofford, Candler, Lovingood, and Wood, were at that time and for a considerable time prior thereto had been directors and stockholders of said bank.

3. That the stockholders in sadi bank numbered about forty, including the defendants, and some of said stockholders other than the defendants were also directors in said bank.

4. That on 4 September, 1911, said Commercial and Savings Bank was paying dividends to its stockholders when it was ascertained that it held unsatisfactory paper amounting to $5,607.29, known as the Carter notes, and the Corporation Commission made an order directing said bank to cease paying dividends until this doubtful paper was made good, whereupon in a meeting of the directors of said bank the cashier was instructed to request the Corporation Commission to continue the payment of dividends upon agreeing to place in said bank a note signed by its directors for the amount of said doubtful paper, the directors stating that the bank would charge off $100 a month of said doubtful paper and apply any undivided profits twice each year to its liquidation.

5. That on 14 October, 1911, at a special meeting of the directors of said bank, and after securing the approval of the Corporation Commission, the following resolution was adopted, the following directors being

present: C. E. Wood, J. A. Richardson, J. L. Smathers, G. W. Candler, D. W. Deweese, W. M. Griffiths, S. W. Lovingood, and C. M. Wofford:

"It is moved and seconded that the directors would sign a note for $5,607.29 in favor of the bank in order to relieve the institution of this amount of paper composing the Carter notes and others received from the First National Bank in the consolidation and merging of their business with the Commercial and Savings Bank, and the note for $5,607.29 is given for the protection of the customers of the Commercial and Savings Bank, but should the bank liquidate or suspend for any reason or purpose, and after the customers are protected and paid in full, then the liability or obligation of the above described note shall cease, and it is agreed and understood the note is only an accommodation one given for the reason only described above.

"It is further agreed that after the institution pays its usual dividends, that all other net earnings are to be credited to a liquidation of this note. The credits are to be made at least every six months."

6. That pursuant to this resolution a note for $5,607.29 was signed by these defendants and said Wood and Deweese, in the expectation and belief that it would be signed by the other directors, and solely for the purposes set out in the resolution.

7. That it was afterwards discovered that a note for $6,387.99, which was another Carter paper, was found to be worthless, and on 4 December, 1911, the directors passed the following resolution:

"There being present the following directors: W. H. Griffiths, J. L. Smathers, G. W. Candler, S. W. Lovingood, C. M. Wofford, D. W. Deweese, and C. M. Hickerson.

"*Resolved,* That the minutes of the meeting of 14 October, 1911, be amended to read: To increase the note from $5,607.29 to $12,145.28. Therefore, it was unanimously agreed by the directors present to sign a note for $12,145.28 and to have other directors to sign for the protection of the customers of the Commercial and Savings Bank of Murphy, North Carolina, and the note to be given for no other reason or purpose only for the protection of the customers and to place the bank in good order and to meet the requirements of the Coropration Commission. It is further agreed that should the bank liquidate or suspend, and after the customers are paid in full, then the liability or obligation of the signers shall cease..

"It is further agreed that the bank may pay its usual dividends and all of the net earnings shall be credited to the liquidation of the above described note, and credits to be made at least every six months.

"The cashier was requested to prepare the necessary papers and arrange to have the note signed at once."

8. That pursuant to this resolution, these defendants, with said Wood and Deweese, signed a note for $12,145.28, payable to said bank, in the belief that it would be signed by the other directors, and solely for the purposes set out in said resolution.

9. That afterwards the earnings of said bank to the amount of $145.28 were applied as credits on said notes, reducing same to the sum of $12,000, and at a later date the three notes, each for $4,000, were given as renewals of the original note for $12,000.

10. That these notes, after the execution thereof by the defendants, as above stated, were placed in said bank and remained in the control of said bank until the appointment of the plaintiff as receiver on 16 March, 1914, and a part of the time at least were deposited by said bank in other banks as security collateral to the indebtedness of said Commercial and Savings Bank to such other banks.

11. That the judgment rendered by his Honor, Judge Long, at April Term, 1916, of the Superior Court of Cherokee County was recovered upon the principal of said notes, to wit, $12,000, together with the accrued interest thereon, as set out in the answer to the first issue stated in said judgment.

12. That no appeal was taken from the judgment rendered by Judge Long at April Term, 1916.

13. That the plaintiff as receiver has paid out on behalf of said Commercial and Savings Bank the sum of $61,205, and that the liabilities now outstanding are at least $46,442.29, and will probably reach $50,442.29.

14. That the assets which are collectible by the receiver, including the judgment rendered by Judge Long, amounted to about $42,650.08, and not including the judgment rendered by Judge Long and upon which the plaintiff asks leave to issue execution, the said assets amount to about $28,479.98; and in either view the assets are less than the liabilities of the bank.

15. That excluding the judgment rendered by Judge Long from the assets which are collectible in the hands of the receiver, there is a deficit of assets to the amount of about $17,000 to $18,000.

16. The plaintiff as receiver has not reduced all the assets in his hands to cash, but has proceeded with the collection and reduction to cash of the assets of said bank to such extent as to enable him to ascertain, and the court finds that he has ascertained, that assets were not sufficient, and the court finds that the assets are not sufficient to discharge the obligations of said bank due to said creditors and depositors as the same have been allowed by the court.

The court further finds as a fact that it was not denied by the parties upon the hearing that, excluding the amount due on the judgment

rendered by Judge Long, the collectible and available assets of said Commercial and Savings Bank are less than the outstanding liabilities by about $17,000 or $18,000, which is in excess of the amount due upon said judgment by the defendants.

17. The court finds as a fact, and so adjudges, that the assets of said bank are not sufficient to discharge the obligations of said bank due to said creditors and depositors as the same have been allowed by the court.

Among other things, it is contended by defendants that leave to issue execution upon the judgment cannot legally be granted until the assets in the hands of the receiver are actually reduced to cash and until the stockholders of said bank are assessed under section 235 of the Revisal for their statutory liability to payment for the benefit of the creditors of said bank.

It is insisted by the plaintiff that the statutory liability is an ultimate liability to which resort can be had only after the other assets of said bank are exhausted, and that it is not necessary to reduce the assets of said bank to cash.

The court is of opinion that a proper construction or interpretation of the clause in the judgment does not necessarily require the plaintiff as receiver to reduce such assets to cash, but requires the plaintiff to proceed with the collection of said assets far enough to enable him to find as a fact that the assets of the bank are not sufficient to discharge the obligations of the bank due to creditors and depositors as the same have been allowed by the court, and that the statutory liability of the stockholders is not such an asset as will postpone by operation of law the collection of the judgment rendered by Judge Long until said statutory liablity is enforced.

The court, therefore, finding as facts that the plaintiff as receiver has proceeded with the collection of said assets to such extent as to satisfy him that said assets are not sufficient to discharge the obligations of said bank to creditors and depositors as the same have been allowed by the court, and the court adjudges that the assets of said bank are not sufficient for such purposes in conformity with the provision of the judgment hereinbefore referred to.

Whereupon it is ordered and adjudged, upon motion of the plaintiff, that execution issue upon said judgment in conformity with the order of his Honor, Judge Long, against the defendants above named, who are the defendants in said judgment.

W. J. Adams,<br>
Judge Presiding.

The defendants excepted and appealed.

*Witherspoon & Witherspoon and Dillard & Hill for plaintiff.*
*M. W. Bell for defendants.*

ALLEN, J. The judgment of Judge Long, properly analyzed, contains these provisions:

1. Judgment absolute against the defendants for the sum of $13,420.50, with interest from 3 April, 1916, on $12,000.

2. Suspension of execution until the plaintiff should make it appear to the court either—

(1) That the defendants, or some of them, are endeavoring to make way with their property; or

(2) That C. B. Hill, receiver of the Commercial and Savings Bank, has proceeded with the collection of the assets of such bank, and that the same are not sufficient to discharge the obligations of said bank due to creditors and depositors.

3. An order authorizing the defendants or any other interested party to make W. H. Griffiths and others parties defendant to this action.

The plaintiff moved execution upon the ground that he had proceeded with the reduction of the assets of said bank to cash so far as to ascertain to a certainty that, exclusive of the aforesaid judgment, the assets lack the sum of $17,000 to $18,000 of being sufficient to discharge the obligations due by said bank to its creditors and depositors.

The defendants admitted the deficit of $17,000 to $18,000 but resisted the issuance of execution on two grounds:

1. That every dollar of the assets of said bank must be reduced to actual cash before execution can issue under the terms of said judgment.

2. That the term "assets" used in said judgment includes the statutory liability of the stockholders of said bank, and that the receiver, before asking for execution, must first have an assessment laid and collected upon the stockholders.

The first position of the defendants is met by the terms of the judgment, which permit execution to issue when the receiver has proceeded far enough to ascertain that the assets will be insufficient to pay creditors, and by the finding, which is not controverted, that this condition exists.

The second involves the construction of the judgment of Judge Long, and the ascertainment of the sense in which the word "assets" is used, the defendants contending that it includes the statutory liability of the stockholders.

The term is broad enough to cover anything which is now or may be available to pay creditors, but as usually understood it refers to the tangible property of the corporation and not to the liability of stockholders, contingent upon insolvency.

It does not include rights and property which do not belong to the corporation, and the current of opinion is that the statutory liability is not for the benefit of the corporation, but is an additional security for creditors.

"A provision of this character does not increase the capital or pecuniary resources of a corporation except indirectly, by increasing its commercial credit; its object is merely to provide a security for creditors in addition to the security furnished by the company's capital." Morawetz Priv. Corp., sec. 869.

"It may be stated as a general rule that statutes making stockholders individually liable to creditors, independently of what they owe the corporation on account of their stock, create a right flowing directly from the stockholders to creditors. The sum thus secured to creditors form no part of the assets of the company, but are a supplemental or superadded security for the benefit of creditors." Thompson Corporations, sec. 3560.

"The statutory liability of the stockholders is created exclusively for the benefit of corporate creditors. It is not to be numbered among the assets of the corporation, and the corporation has no right or interest in it." Cook Stock and Stockholders, sec. 218.

These excerpts from standard treatises on corporations are quoted and approved in *Runner v. Wiggins*, 147 Ind., 243, and the court concludes that "The liability provided by statute against the stockholders is not, as we have seen, considered an asset or right of the corporation."

These authorities are very pertinent in the construction of our statute (Rev., sec. 235) which imposes the liability on the stockholders "for all contracts, debts, and engagements of such corporation," and not for the benefit of the corporation.

The subsequent act (Laws 1911, ch. 25), providing for the assessment of the stockholders, is a recognition of the distinction between ordinary assets of the corporation and the statutory liability, and is substantially a legislative construction that the former does not include the latter.

It provides for an assessment "whenever any banking corporation chartered by the State shall become insolvent, and it shall appear to the court having jurisdiction of the cause that such assets of such bank are insufficient to discharge its obligations."

Why use the word "assets" in this connection, without qualification, if it includes the personal liability of the stockholders? Why not say "other assets"?

The resolution adopted by the directors at the time they agreed to execute the notes upon which the judgment was obtained also sustains this construction of the judgment and the statute.

The bank held certain Carter notes which were worthless, and upon complaint being made by the Corporation Commission, the directors executed their notes "in favor of the bank in order to relieve the institution of this amount of paper composing the Carter notes."

If the defendants executed their notes to relieve the bank of the Carter notes, is it not reasonable to assume that one note was substituted for the other, and that the notes of defendants stand as to the bank and its stockkholders as did the Carter notes, which were assets and available to relieve the stockholders of liability?

We, therefore, conclude that the second position of the defendants cannot be maintained.

Affirmed.