GURNEY P. HOOD, COMMISSIONER OF BANKS OF THE STATE OF NORTH CARO-
LINA, EX REL. NORTH CAROLINA BANK AND TRUST COMPANY v.
NORTH CAROLINA BANK AND TRUST COMPANY AND MARGARET
E. BRAND, EXECUTORS OF THE LAST WILL AND TESTAMENT OF R. A.
BRAND, DECEASED.

(Filed 26 February, 1936.)

**1. Banks and Banking H c—**

The Commissioner of Banks acts in a capacity equivalent to a receiver
in taking over the assets of an insolvent bank, C. S., 218 (c), and in such
capacity represents the depositors and other creditors in the collection and
distribution of the assets of the bank.

**2. Banks and Banking H a—Statutory liability of stockholders of bank
creates a trust fund for the benefit of creditors.**

The statutory liability imposed upon stockholders of an insolvent bank
is created, not for the benefit of the bank, but for the benefit of depositors
and other creditors, and constitutes a fund in the nature of a trust fund
in the sense that it should be maintained intact and be available upon
insolvency for equitable distribution among all creditors.

**3. Same—**

By provision of C. S., 219 (c), an administrator, executor, guardian, or
trustee is not personally liable for the statutory liability on bank stock
held in their representative capacities, but such liability attaches to the
estate or funds in their hands.

**4. Same—Failure of trustee to sell bank stock for reinvestment held not to relieve estate of statutory liability.**

It appeared from the statement of facts agreed that, under the terms of testator's will, certain shares of bank stock, together with other property, were bequeathed to named executors and trustees, testator directing that the income from the estate be paid his wife during her life, then to his children, and the *corpus* of the estate paid his grandchildren upon the death of his children. The bank and testator's wife were named co-executors and trustees under the will. After testator's death the stock was changed on the books of the bank from testator's name to the "executors of the estate." Thereafter, one of the children, representing the beneficiaries and the testatrix, went to the trust officer of the bank and advocated the sale of the bank stock for reinvestment, which the trust officer declined to do, stating that the stock of the bank was a good investment. Later the bank became insolvent and was taken over by the statutory receiver. The executors thereafter filed their final settlement, and defendant executrix resisted the assessment of the statutory liability on the bank stock against the estate. *Held:* Conceding that the bank breached its duty as trustee in failing to sell the stock for reinvestment, C. S., 4018, its wrongful act will not relieve the estate of the statutory liability to the prejudice of depositors and creditors of the bank, who had no notice of the terms of the trust, and were entitled to regard the statutory liability as additional security, and notice to the bank not being notice to the depositors and other creditors, since the fact of the establishment of the trust did not appear upon the books of the bank.

**5. Same—**

The principle that a corporation cannot relieve a stockholder of liability for the balance due on unpaid stock to the prejudice of creditors of the corporation applies to the statutory liability of bank stockholders.

**6. Same—Trust estate held liable for statutory stock assessment, although ultimate beneficiaries were minors.**

Under the provisions of C. S., 219 (c), the trust estate is liable for the statutory assessment on bank stock owned by it, regardless of the method by which the trust is established, and where shares of bank stock appear on the books of the bank in the name of "executors," the statutory liability thereon of the estate may not be defeated by showing that the stock was held by the executors as executors and trustees under the will for the benefit of minor ulterior beneficiaries, the beneficiaries of the income from the trust estate being of age, and there being nothing on the books of the bank to disclose the trusteeship.

**7. Equity A c—**

The maxim that equity regards that as done which ought to be done will not be enforced to the injury of innocent third parties.

STACY, C. J., and CLARKSON, J., dissenting.

APPEAL by defendant Margaret E. Brand, executrix, from *Clement, J.,* at May Term, 1934, of GUILFORD. Affirmed.

Plaintiff Commissioner of Banks, under the authority conferred by the statute, levied an assessment against all the stockholders of the failed North Carolina Bank and Trust Company for the amount of stock held by each, and among them against the defendants, executors of the last will and testament of R. A. Brand, deceased, for the stock liability on five hundred shares, of the par value of ten dollars each, and docketed judgment against them for five thousand dollars. From the assessment so levied, the defendant Margaret E. Brand in apt time appealed to the Superior Court.

In the Superior Court the case was submitted without a jury upon the following agreed facts:

"1. The North Carolina Bank and Trust Company was a banking corporation, organized under the laws of the State of North Carolina, with its principal office in Greensboro, Guilford County, North Carolina, and a branch office in Wilmington, New Hanover County, North Carolina, and as such was authorized to do a trust business. On 20 May, 1933, the plaintiff declared said bank insolvent, took possession thereof, and filed in the office of the clerk of the Superior Court of Guilford County notice of his action and of the reason therefor. On 22 June, 1933, the plaintiff levied an assessment equal to the stock liability of each stockholder against all of the stockholders of the North Carolina Bank and Trust Company, and on 3 July, 1933, filed a copy of said levy in the office of the clerk of the Superior Court of Guilford County; that said assessment was recorded and docketed in said office as a judgment for $5,000 in favor of the plaintiff and against the defendants; that a transcript of said judgment was also docketed in the office of the clerk of the Superior Court of New Hanover County. Thereafter Margaret E. Brand requested the North Carolina Bank and Trust Company, as her coexecutor and cotrustee under the will of R. A. Brand, deceased, to appeal from said levy and assessment, but it refused so to do, and an appeal was thereupon filed by said Margaret E. Brand within the time prescribed by law.

"2. R. A. Brand died a resident of New Hanover County, on or about 24 June, 1930, leaving a last will and testament, a copy of which is hereto attached as 'Exhibit A,' and made a part hereof as if fully set out herein. Said will was duly admitted to probate in the office of the clerk of the Superior Court of New Hanover County on or about 28 June, 1930, at which time the North Carolina Bank and Trust Company and Margaret E. Brand qualified as executors of the estate of said decedent.

"3. R. A. Brand died leaving and surviving him the following children, to wit: Robert A. Brand, Jr., Etta Brand Adams, and Margaret Brand Taliaferro; and the following grandchildren, to wit: Margaret Brand and Martha June Brand, children of Robert A. Brand, Jr.; Margaret Brand Taliaferro, Lucy Taliaferro, and Carolyn Davis Taliaferro, children of Margaret Brand Taliaferro; and Lawrence Adams, III, a child of Etta Brand Adams. All of said children and grandchildren are now living, and all of said grandchildren are now minors under the age of twenty-one years.

"4. Margaret E. Brand is now and was at all times herein mentioned wholly inexperienced in business, and the North Carolina Bank and Trust Company, through its trust department, at Wilmington, held itself out as competent and qualified to manage the estate of her deceased husband, R. A. Brand, and to advise the said Margaret E. Brand in all matters connected therewith in which she was interested as coexecutor and cotrustee, and, except as hereinafter stated, said bank, through its trust department, at all times handled the active management of said estate, kept all records, and received and disbursed all funds, merely calling upon the said Margaret E. Brand for her signature whenever same was necessary.

"5. At the time of his death, R. A. Brand owned five hundred shares of stock of the North Carolina Bank and Trust Company of the par value of $10.00 per share. Immediately after his death said stock came into the possession of the executors of his estate, and was transferred on the books and records of the bank to 'North Carolina Bank and Trust Company and Margaret E. Brand, executors of the last will and testament of R. A. Brand, deceased,' in which name it has remained at all times since.

"6. On numerous occasions during a period of approximately two years prior to the beginning of the liquidation of the North Carolina Bank and Trust Company, Robert A. Brand, Jr., one of the legatees under his father's will, acting on behalf of himself and of his mother and the other beneficiaries under said will, consulted the trust officer of the North Carolina Bank and Trust Company at Wilmington and urged the sale of said stock and a reinvestment of the proceeds therefrom in Government Bonds or other similar securities, but said trust officer, who had assumed the active management of said estate on behalf of said bank, stated to the said Robert A. Brand, Jr., that said stock was a good and safe investment and should be retained, and in spite of protests by the said Robert A. Brand, Jr., on behalf of himself, his mother, and the other beneficiaries under his father's will, said trust officer, acting on behalf of said bank, declined to sell or dispose of said stock.

"7. On or about 23 May, 1933, at the suggestion of the North Carolina Bank and Trust Company, said bank and Margaret E. Brand filed in the office of the clerk of the Superior Court of New Hanover County a final accounting as executors of the estate of R. A. Brand, deceased, and thereupon all of the property and assets of said estate were transferred and delivered to the North Carolina Bank and Trust Company and Margaret E. Brand, as trustees, upon the terms, conditions, and uses set forth in the last will and testament of R. A. Brand, deceased, and the North Carolina Bank and Trust Company and Margaret E. Brand qualified and are now acting as trustees of said estate.

"Upon the foregoing facts, the plaintiff contends that the estate and funds in the hands of North Carolina Bank and Trust Company and Margaret E. Brand, as executors and trustees under the will of R. A. Brand, deceased, are liable for the payment of the $5,000 assessment herein referred to, and the defendant Margaret E. Brand contends that said estate was not a stockholder in the North Carolina Bank and Trust Company at the time it suspended business, or within sixty days prior thereto, and that said estate is not liable for said assessment."

The material portions of the will of R. A. Brand are as follows:

"Second: I give, devise and bequeath unto my said Executors all of the rest and residue of my estate, of whatsoever nature, kind, description, whether real, personal, or mixed, and wheresoever situate, in trust nevertheless for the following uses and purposes, and none other, that is to say: That my said Executors shall have and hold said property for the sole use and benefit of my beloved wife, Margaret E. Brand, for and during the term of her natural life and pay the net income arising therefrom unto my said beloved wife, Margaret E. Brand, for and during the said term, in quarterly installments."

"Third: After the death of my beloved wife, Margaret E. Brand, I direct my said Executors to pay, in equal proportions, to my said three (3) children (Etta S. Brand Adams, Margaret E. Brand Taliaferro, and Robert A. Brand, Jr.), in quarterly payments, the net income, rents, profits and interest arising from my estate, and at the death of my said three children, I direct my said Executors to divide the property remaining in my said estate between my grandchildren, share and share alike, absolutely, unconditionally, and in fee simple forever."

"Fourth: I hereby authorize, direct and empower my said Executors, in their sound discretion, both concurring, to sell or otherwise dispose of, any or all of the real estate, except my present dwelling, save as hereinafter provided that I may die seized or possessed of, and hold and reinvest the proceeds arising from said sale, or other disposition, of my said real estate to and for the same uses, trusts, and purposes that they held said property in its unconverted state, as hereinbefore set forth."

"Fifth: I hereby constitute and appoint my wife, Mrs. Margaret E. Brand, and North Carolina Bank and Trust Company of Wilmington, North Carolina, my lawful executors."

Upon the foregoing facts, judgment was rendered in the court below that the assessment levied against the defendants be affirmed, and that the appeal therefrom be dismissed. From this judgment defendant Margaret E. Brand, executrix, appealed to this Court.

*Brooks, McLendon & Holderness for appellee.*
*Stevens & Burgwin for appellant.*

Devin, J. It is admitted that the shares of stock in question belonged to defendant's testator, R. A. Brand, and that upon his death they passed to his executors under the provisions of his will. The will devises and bequeaths all of testator's property, both real and personal, to his executors in trust to have and hold the same for the use and benefit of his wife, the defendant Margaret E. Brand, to pay to her the net income therefrom during the term of her natural life, and after her death the net income, "rents, profits, and interest," to be paid to his three children, and at the death of his children, the remaining property to be divided among his grandchildren.

After the death of R. A. Brand the said shares of stock in the North Carolina Bank and Trust Company were transferred on the books of the bank to "North Carolina Bank and Trust Company and Margaret E. Brand, executors of the last will and testament of R. A. Brand, deceased." In their names the stock has remained at all times since.

After the bank had closed and the plaintiff Commissioner of Banks had taken over its assets and affairs for the purpose of liquidation, the named executors filed their final settlement as such.

The plaintiff herein is acting in a capacity equivalent to that of a receiver (C. S., 218 [c]; *Blades v. Hood, Comr.,* 203 N. C., 56), in the performance of his duty to collect and distribute all the assets of the bank for the benefit of its depositors and creditors. To that end he stands in the place of and represents the creditors.

The question presented by this appeal is whether bank stock, held by executors and trustees under a will, can avoid assessment for the statutory liability of stockholders, on the ground that the bank, one of the executors and trustees, negligently retained the shares of stock instead of selling them for proper investment, in breach of the trust created by the will.

The appellant contends that for this reason, and for the further reason that under the terms of the will the *corpus* of the estate was devised to

the testator's grandchildren as ultimate takers, the estate was not liable to assessment as stockholder, within the meaning of the statute, at the time the bank failed.

To determine this question, it becomes necessary to examine the pertinent statutes in force at the time and the decisions of this Court with reference to the nature and effect of the liability of the holders of bank stock to assessment for the benefit of depositors and creditors, on failure of the bank.

I. The statute, C. S., 219 (a), which imposes liability upon holders of bank stock, is as follows:

"The stockholders of every bank organized under the laws of North Carolina, whether under the general law or by special act, shall be individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporation, to the extent of the amount of their stocks therein at par value thereof, in addition to the amount invested in such shares. . . . The term stockholders shall apply not only to such persons as appear by the books of the corporation to be stockholders, but also to every owner of stock, legal or equitable, although the same may be on such books in the name of another person."

This statute was originally enacted by the North Carolina General Assembly of 1897, ch. 298, and was taken from section 12 of the National Banking Act of 1864, Rev. St. U. S., 5151.

The quoted provisions of the statute are very broad in their terms and impose liability upon every owner of stock in a bank "for all contracts, debts, and engagements of such corporation," not for the benefit of the corporation but for the benefit of the depositors and other creditors. The liability of stockholders is statutory and attaches by virtue of the statute, to the owners of stock, and is imposed by statute for the benefit of depositors and creditors. *Smathers v. Bank,* 155 N. C., 283.

"The statutory liability of stockholders is created exclusively for the benefit of corporate creditors. It is not to be numbered among the assets of the corporation, and the corporation has no right or interest in it." Cook on Stock and Stockholders, sec. 218. It is an additional security for creditors. *Hill v. Smathers,* 173 N. C., 642.

In *Smathers v. Bank,* 135 N. C., 410, it is stated that the statute imposing the liability of stockholders, "incorporates in the contract of subscription the additional obligation that, if necessary to pay the debts of the corporation, the subscriber will pay an amount in addition to his subscription equal to the par value of his stock. This obligation is in trust for the security of the creditors. The corporation may not, as against creditors, relieve him from the obligation."

In *Foundry Co. v. Killian,* 99 N. C., 501 (decided in 1888), it was held that the unpaid subscriptions to stock (and same rule applies to

the statutory liability, *Smathers v. Bank,* 135 N. C., 410), constitute a trust fund for the benefit of the creditors of the corporation—a trust fund pledged for the payment of the debts of the corporation, citing *Sawyer v. Hoag,* 17 Wall., 620.

In *Smathers v. Bank,* 135 N. C., 410, *Mr. Justice Connor,* delivering the opinion, uses this language: "The doctrine that the capital stock of a corporation constitutes a trust fund has been accepted and acted upon by this Court," and he quotes with approval from 10 Cyc., 553, the following: "It is a favorite doctrine of the American courts that the capital stock and other property of a corporation are to be deemed a trust fund for the payment of the debts of the corporation." *Foundry Co. v. Killian, supra; Cotton Mills v. Cotton Mills,* 115 N. C., 475; *Bank v. Cotton Mills,* 115 N. C., 507.

It is an essential American doctrine, based upon the principle first enunciated by *Judge Story,* that the capital stock of a corporation is a trust fund to be preserved for the benefit of creditors. *Foundry Co. v. Killian, supra.*

"Statutes making stockholders individually liable to creditors create a right flowing directly from the stockholder to creditors." Thomp. Corp., sec. 3560.

It is apparent from these and many other authorities, which could be cited, that it is the purpose of the statutes imposing the liability of stockholders to provide security, frequently referred to as a "trust fund," for the depositors and creditors, in addition to the security furnished by the tangible property of the bank. *Fuller v. Service Co.,* 190 N. C., 655; *Redrying Co. v. Gurley,* 197 N. C., 56.

As pointed out by *McRae, J.,* in *Bank v. Cotton Mills,* 115 N. C., 507, the words, "trust fund," used in this connection, are not to be understood in the strict sense to import a direct and express trust attaching to the property, but mean that all the assets will be equitably distributed for the benefit of all creditors.

Illustrating the nature and effect of the principle that the stockholder's liability constitutes a fund to be preserved for the benefit of depositors and creditors, we have the rule that such liability may not be set off against the bank's liability to depositors and creditors. As was held in *In re Trust Co.,* 197 N. C., 613, a depositor, who is also a stockholder of an insolvent bank, is not entitled to have the total amount of his deposit applied as payment on his assessment. Only the dividends apportioned to him as a depositor may be so applied. *Pritchard v. Hood, Comr.,* 205 N. C., 790.

II. But the defendants in the case at bar are not individually and in their own right the owners and holders of the stock in question. It was bequeathed to them as executors and trustees to be held for the pur-

poses expressed in the will of R. A. Brand. At common law, when stock was recorded on the books of the corporation in the name of a trustee for others, the trustee was personally liable as if the absolute owner; though the estate of a deceased shareholder was liable when shares came into the hands of an executor. Cook on Stock & Stockholders, secs. 244-248.

That rule, however, has been generally changed by statute. The North Carolina statute appertaining to those who hold stock in a representative capacity, originally enacted in 1893 (C., 471), now C. S., 219 (c), is as follows: "Persons holding stock as executors, administrators, guardians, or trustees shall not personally be subject to any liabilities as stockholders, but the estate and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust fund would be if living and competent to hold stock in his own name."

This provision extends to every trust relation, however created, and attaches liability to the estate and funds in the hands of the trustee. *In re Trust Co.*, 203 N. C., 238.

The exemption of the personal liability of the trustee is limited to cases where there is a probability of some estate to respond to the liability. *Trust Co. v. Jenkins*, 193 N. C., 761; 7 C. J., 770.

The appealing defendant contends that her codefendant, the bank, was negligent in the administration of the trust created by the will, in that, in spite of her protest, it continued to hold the shares of its own stock as a part of the fund until the bank became insolvent and was closed; that it was the duty of the bank to have invested the fund which came into its hands under the terms of the will in accordance with the statute, C. S., 4018.

While the fund came into the hands of defendants impressed with a trust, to be held for the purposes declared in the will, a portion of the fund, to wit, the five hundred shares of stock in question, came into their hands in the form of an investment which had been selected and apparently approved by the testator; yet, conceding the bank committed a breach of duty in failing to sell the shares when salable and reinvesting the fund, can the deposit creditors of the bank be made to suffer on that account? There was no notice to them of the terms of the trusteeship. They were only chargeable with notice of the manner in which the names of the stockholders appeared on the stock books of the bank, and had a right to rely in making deposits on the statutory liability of the stockholders as additional security for their deposits. *Trust Co. v. Jenkins, supra.*

And a breach of duty on the part of one of the trustees or of the bank could not injuriously affect the rights of creditors without notice. The

stock liability was to creditors an additional security, and notice to the bank is not necessarily notice to depositors or creditors.  *Trust Co. v. Jenkins, supra.*

"The governing officers of a corporation cannot, by agreement or other transaction with the stockholders, release the latter from their obligation to pay, to the prejudice of creditors, except by fair and honest dealing and for a valuable consideration.  Such conduct is characterized as a fraud upon the public, who were expected to deal with them."  *Drug Co. v. Drug Co.,* 173 N. C., 502.

"The creditors of a company may well ask that the fund upon which they relied (the capital stock subscribed) shall really exist and be held sacred to discharge corporate liabilities."  *Foundry Co. v. Killian, supra.*

The Court was here speaking of unpaid stock subscription, but the principle applies to the statutory liability of bank stockholders.  *Smathers v. Bank,* 135 N. C., 410.

"The liability which attaches to the ownership of the stock, which was held by him as a guardian, is statutory, and therefore would bind the estate of the wards in his hands."  *Smathers v. Bank,* 155 N. C., 283.

"The corporation may not, as against creditors or other stockholders, relieve him from the obligation of stock liability."  *Smathers v. Bank,* 135 N. C., 410.  Nor can stockholders evade liability by any private or secret arrangement that may have been entered into among themselves.  *Foundry Co. v. Killian, supra.*

It was held in *Trust Co. v. Jenkins, supra,* that where the rights of depositors and creditors of the bank are involved, it was immaterial that the officers of the bank had notice of the conditions under which stock was held by a trustee.  The liability imposed by statute upon stockholders of a bank is for the benefit of the depositors and creditors and not for the bank.

In *Corp. Com. v. McLean,* 202 N. C., 77, the defendants in that case sought to avoid the statutory liability on the ground that those from whom they had purchased the shares had perpetrated a fraud upon them, but this Court denied relief on that ground, stating that "to hold otherwise would defeat the purpose of the statute, which is to provide an expeditious proceeding for the enforcement of the statutory liability of all persons who are stockholders of an insolvent banking institution at the date of its insolvency."

*Corporation Com. v. McLean, supra,* is cited with approval in *Commissioner of Banks v. Carrier,* 202 N. C., 850, where a stockholder sought to escape liability for assessment by allegation that her purchase of stock was induced by fraud of the officers of the bank.  There it was

held she was not entitled to have her purchase of stock canceled to the detriment of the depositors and creditors of the bank, she having held the stock for two years and having exercised the privileges of a stockholder.

In *Scott v. Deweese,* 181 U. S., 202, it is stated: "If the subscriber became a shareholder in consequence of fraud practiced upon him by others, whether they be officers of the bank or officers of the Government, he must look to them for redress, and is estopped as against creditors to deny that he is a shareholder within the meaning of sec. 5151 (C. S., 219 [a]), if at the time the rights of creditors accrued he occupied and was accorded the rights appertaining to that position."

It has been held that where stock is left by will or descends to an infant, the estate in the hands of the guardian is liable for the assessment. 7 C. J., 770; *Clark v. Ogilvie,* 111 Ky., 181.

In *Clark v. Ogilvie,* 111 Ky., 181, the father of the infant defendants died while owning certain shares of stock in a national bank. This stock came into the hands of defendants' guardian, who continued to hold it until the bank failed. Upon action by the receiver of the bank the guardian admitted these facts and judgment was rendered against the estate of the wards. The Federal statute, 5152, U. S. Revised Statute, is in the same words as C. S., 219 (c). Subsequently, the defendants, then of age, set up that the guardian had violated the trust in holding the stock. It was held that, while the personal judgment against the infant defendants was unauthorized, the judgment was properly entered against the estate of the wards in the hands of the guardian. Further referring to section 5152, U. S. Rev. St., our C. S., 219 (c), the Kentucky Court used this language: "It will be observed that in fixing the liability of stockholders of a national bank, so far as the persons beneficially owning stock may be under the legal disability of infancy are concerned, as well as instances where the stock is held by executors, administrators, or other trustees, it is the estate and not the person that is made liable for assessment. The infants could not bind themselves by contract, or otherwise, as stockholders of the bank, nor could their father have bound them, had he intended to do so, by having this stock conveyed to them directly."

*Mr. Justice Connor,* speaking for the Court in *Corp. Com. v. McLean, supra,* uses this language: "The only issues of fact that may be raised by such an appeal (from an assessment against stockholders), ordinarily, are: (1) Was the appellant a stockholder of the insolvent banking corporation at the date of the assessment? (2) If so, how many shares did he own at said date?"

The fact that the bank itself, coexecutor, was negligent in that it retained the shares and, together with the appealing defendant (though over her protest), maintained the status of holders of the stock in the

capacity of executors as shown by the stock books of the bank, could not change the rule of liability as against the claims of depositors and creditors.

It was held in *Hood, Comr., v. Darden,* 206 N. C., 566, that when the bank became insolvent after the death of a testator who owned shares therein, judgment should be rendered against his executrix for the stockholders' liability, payable out of the funds of the estate, the liability being contractual, though no preference was created for priority of payment of such assessment from the assets of decedent's estate.

In *Corp. Com. v. Latham,* 201 N. C., 342, it was held that where bank stock was transferred before the failure of the bank, and in good faith, to trustees for infants "without any estate," no personal liability was imposed on the transferor. There the trustees were legally capable of holding the stock. C. S., 219 (d), exempts from personal liability those who in good faith transfer stock to any person of full age.

While an unlawful investment in, or negligent retention, of bank stocks among trust funds would subject the trustee to individual liability, it does not follow that the *cestui que trust* should be entitled to have the fund relieved of liability at the expense of creditors who deposited their money in the bank on the faith of the liability of the stock to assessment for their benefit.

In *In re Trust Co.,* 203 N. C., 238, *Adams, J.,* thus states the law: "It is an established rule of law that a transfer of stock in a corporation must be made to a person who is not only legally capable of holding the stock, but is legally bound to respond when an assessment is made. . . . An infant cannot be held liable on his subscription, for he is without legal capacity to bind himself by contract. . . . To transfer stock directly to a minor leaves the transferor liable for assessment. *Early v. Richardson,* 280 U. S., 496."

However, in *Hood, Comr., v. Martin,* 203 N. C., 620, and in *Hood, Comr., v. Paddison,* 206 N. C., 631, it was held that the fact that a stockholder was induced to purchase the stock by the false and fraudulent representation of the president of the bank as to the condition of the bank, could be set up as a defense to the enforcement of an assessment for stock liability, when the stockholder had acted with promptness and diligence. And *Chamberlain v. Trogden,* 148 N. C., 139, is cited as authority for this holding.

The reasoning in *Hood, Comr., v. Martin, supra,* is based to some extent on the fact that by statute, in the final settlement of the bank's affairs, after all the depositors and creditors have been paid in full, the surplus should be distributed pro rata to the stockholders, and that under the facts and circumstances of that case it would be inequitable for the officer of the bank, a stockholder, who perpetrated the fraud, to profit by his wrong.

Considering it in that aspect, due weight seems not to have been given the view that in the event there be a surplus after all the depositors and creditors are paid in full (which in the nature of things would rarely happen), such inequity should be corrected among the shareholders in the division of the surplus, rather than at the expense of innocent creditors, who deposited their money in the bank in faithful reliance on the security of the liability of all stockholders as their names appeared on the stock books of the bank.

*Chamberlain v. Trogden, supra,* cited in *Hood, Comr., v. Martin, supra,* was an action on a note given for subscription to the capital stock of a manufacturing corporation. Fraud on the part of the officers of the corporation in procuring the subscription was set up as a defense to the note. It was determined in that case, however, that the defendant there had not exercised due care and diligence in discovering the fraud and repudiating the contract, and his defense was not sustained, recovery being had on the note. In delivering the opinion of the Court, *Hoke, J.,* uses this language: "The weight of authority in this country seems to establish that, under exceptional circumstances, the subscriber may avail himself of the position suggested (right to rescind) even after insolvency. (Citing authorities from other jurisdictions.) All of the authorities, however, are to the effect that, in order to do so, the subscriber must act with promptness and due diligence, both in ascertaining the fraud and taking steps to repudiate his obligation."

So that, applying the rule in *Hood, Comr., v. Martin, supra,* to the case at bar, the appealing defendant cannot be said to have acted with the diligence and promptness necessary to make this defense available, even if it had been predicated on the fraud of an officer of the bank. There is here no contention that fraud was practiced upon her. There is no imputation of lack of good faith. She bottoms her defense upon a negligent breach of duty on the part of her coexecutor and trustee. In the facts agreed, she states her contention as follows: "The defendant Margaret E. Brand contends that said estate was not a stockholder in the North Carolina Bank and Trust Company at the time it suspended business, or within sixty days prior thereto, and that said estate is not liable for said assessment." The facts agreed further set forth that on numerous occasions one of the legatees, acting for her, urged the trust officer of the bank to sell the stock for reinvestment, but the trust officer maintained the stock was a good and safe investment and declined to sell it. With full knowledge of the facts, and without taking any action to require her coexecutor to comply with her request, the shares of stock were permitted to remain on the stock books of the bank in the name of herself and the bank as executors of R. A. Brand for nearly three years, and until the bank was closed.

The appealing defendant's counsel, Mr. Burgwin, in his able oral argument and in his brief, calls our attention to *Rutledge v. Stackley,* 162 S. C., 173, 160 S. E., 429, as authority for his position. There the owner of bank stock, in good faith, transferred the shares to trustees for his minor children, and it was held by a divided court that neither the trustees personally nor the estates of the infants were liable to assessment on failure of the bank, citing *Early v. Richardson,* 280 U. S., 496. However, it is pointed out in the dissenting opinion that in *McNair v. Darragh,* 31 F. (2d), 906, a different conclusion from that in *Early v. Richardson, supra,* seems to have been reached, and that the Supreme Court of the United States denied writ of *certiorari* to review it. (*Gamble v. Darragh,* 280 U. S., 563.)

We are also referred to the case of *Mobley v. Phinizy* (Ga. App.), 155 S. E., 73. In the last named case it appears that one who owned certain shares of stock in a bank, by will created a trust estate for the benefit of his imbecile son, appointing trustees with full power to manage the estate. Included in this fund, so set apart, were seven shares of bank stock. After the death of the testator the trustees acquired 139 other shares of stock in the bank, an investment not authorized by law, and all these shares were held by them as trustees at the time the bank failed. It was held that the estate of the incompetent was not liable to assessment under the terms of the banking act for the benefit of depositors, nor under the terms of the charter of the bank, and that any such liability was the liability of the trustees making such illegal investment.

The reasoning upon which this case was decided seems to have been based on the view that when the bank issued stock to the trustees as trustees, it was apprised of the fact that it was dealing with trust funds, and therefore participated in the mismanagement of trust funds, and was *in pari delicto* with the trustees; that, though depositors knew nothing of these illegal investments, the bank was one of their own selection, and if they selected a bank whose officials disregarded the law and participated in illegal investment, they should suffer rather than one who was *non compos mentis.*

While we are not disposed to follow this line of reasoning to the conclusion reached, the facts in the Georgia case, as well as those in the South Carolina case, are distinguishable from those in the case at bar.

Here the stock was at all times held by the defendants as executors of R. A. Brand, and there was nothing to take it out of the rule of liability fixed by the statute. The will of R. A. Brand made the defendant Margaret E. Brand the beneficiary for her life, and those who took the income in succession to her were also of full age at the time the bank failed. There was nothing on the books to indicate a trusteeship for the benefit of minors.

It is interesting to note that it was held in *McNair v. Darragh,* 31 F. (2d), 906, *Circuit Judge Stone* delivering the opinion, that when shares of bank stock were transferred, in good faith, to defendant as trustee for infant children, the liability for assessment on failure of the bank fell, not upon the transferor, but on the estate, in accordance with the provisions of Rev. St., 5152 (C. S., 219 [c]). It is stated in the opinion in this case that it was to remedy the uncertainty which arose where stock was held by an executor, guardian, or trustee, that the quoted section, Rev. St., 5152, was enacted to make certain in all instances the liability for assessment. We quote further from the opinion in this case:

"It states that the executors, administrators, guardians, or trustees shall not be personally subject to the stockholder liability for stock belonging to the estate. Also, the section states that the estates and funds in their hands shall be liable. It states the extent of the liability of such funds to be the same as the 'person interested in such trust funds would be, if living and competent to act and hold the stock in his own name.' 'If living,' as thus used, refers, of course, to where the stock was owned by a deceased person whose estate is in course of administration and refers back to 'executors, administrators,' 'competent to act and hold the stock in his own name,' clearly primarily carries the thought of guardianship or trusteeship, and specifically covers the point of incompetency. As the only reason suggested here by appellant why appellee should be held personally liable, is the incompetency of the minors, under the trust, and as section 66 specifically covers trusts, declares trustees not personally liable, and declares the trust estate liable to the extent that the beneficiary would be 'if . . . competent to act and hold the stock in his own name,' we think the section exactly fits this situation. It is one kind of the situations which the statute was enacted to cover. See *Fowler v. Gowing,* 165 F., 891 (C. C. A., 2)."

The defendant seeks to invoke the equitable principle set forth in the maxim: "Equity regards that as done which ought to be done." This salutary principle, that equity will sometimes consider that property has assumed certain forms with which it ought to be stamped, or that the parties will perform certain duties or carry out the terms of contracts which they ought to fulfill, will not be enforced to the injury of innocent third parties. *Casey v. Cavanoc,* 96 U. S., 467, 21 C. J., 201.

Though it may have been due to the negligence of the bank in failing to dispose of the shares of stock when salable, still the appealing defendant and her codefendant, as executors, were the holders thereof when the bank closed, and the estate to which the stock belonged as a part thereof must bear the burden of the liability to assessment rather than the loss fall upon the depositors and creditors for whose benefit the statute created the liability.

The question of the liability of the bank to the estate of R. A. Brand for alleged breach of trust is not presented by this appeal.

Therefore, upon consideration of the facts agreed as shown by the record and an examination of the pertinent statutes as interpreted by the authorities cited, we conclude that the defendants were holding the shares of stock in question, as executors of R. A. Brand, deceased, at the time the bank closed, and that pursuant to the provisions of the statute the estate and funds in their hands must be held liable for the assessment levied by the plaintiff Commissioner of Banks.

The learned judge who heard the case below properly decided that the defendant's appeal should be dismissed.

Affirmed.

STACY, C. J., dissenting: The question is this: Will the statutory liability of stockholders in a bank be enforced against one who appears as a stockholder only by reason of the faithlessness of the bank? The answer should be, No.

We have held that fraud on the part of an officer of a bank in the sale of its stock will release the purchaser of this statutory liability. *Hood, Comr., v. Martin,* 203 N. C., 620, 166 S. E., 793. The conclusion rests upon the principle that the statute existent at the time enters into and becomes a part of the contract of stock subscription, and that no contract, or its complement, will be enforced which is grounded upon a wrong. *Hood, Comr., v. Paddison,* 206 N. C., 631, 175 S. E., 105.

It is not after the manner of equity "to condone a little evil that good may come of it." It is submitted that in the instant case the plaintiff is seeking to gather grapes from the thorn-bush which the bank planted. He invokes the trust-fund doctrine to take from the defendants, through the wrong of the trustee bank, not "exclusively for the benefit of corporate creditors," as said in *Hill v. Smathers,* 173 N. C., 642, 92 S. E., 607, but that its general assets may be increased. Under the 1927 amendment to the statute, ch. 113, sec. 13 (d), Public Laws 1927, the liability of the stockholders is made "immediately available as general assets of the bank for distribution as other assets." It was upon this amendment that the *Martin case, supra,* was decided, and distinguished from *Hill v. Smathers, supra.*

Undoubtedly the bank could not recover in the instant case because of its breach of trust, yet all sums collected by the plaintiff are to "become immediately available as general assets of the bank." Thus by indirection is accomplished that which is not permitted to be done directly. The whole difficulty arises from the failure of the bank in the first instance to discharge its trust obligation to the defendants. *Fisher v.*

*Fisher,* 170 N. C., 378, 87 S. E., 113. Supposed rights bottomed upon this neglect ought not to stand. *Nullus commodum capere potest de injuria sua propria.* Broom's Legal Maxims, sec. 279; *Parker v. Potter,* 200 N. C., 348.

CLARKSON, J., dissenting: R. A. Brand died on 24 June, 1930. He had $5,000 (500 shares, par value of $10.00) in stock in the N. C. Bank and Trust Company. Under his will he left same to the *N. C. Bank and Trust Company* and Margaret E. Brand, executors and trustees for certain purposes. "Immediately after his death said stock came into the possession of the executors of his estate and was transferred on the books and records of the bank to 'N. C. Bank and Trust Company and Margaret E. Brand, executors of the last will and testament of R. A. Brand, deceased.' " Nothing else appearing, the stock would be assessable "for all contracts, debts, and engagements of such corporation." But equity steps in and halts the legal hand by showing gross negligence—the twin of bad faith and fraud.

On or about 23 May, 1935, the *North Carolina Bank and Trust Company* and Margaret E. Brand, executors, filed in the office of the clerk of the Superior Court the final account, and thereupon all the property and assets of the estate were transferred and delivered to the *North Carolina Bank and Trust Company* and Margaret E. Brand, as trustees, upon the terms, conditions, and uses set forth in the will of the said R. A. Brand.

In the agreed statement of facts set forth in the record, pages 1-5, it. is admitted that the said Margaret E. Brand is and was wholly inexperienced in business, and the *North Carolina Bank and Trust Company* held itself out as competent and qualified to manage the estate of her deceased husband and to advise the said Margaret E. Brand in all matters connected therewith, and that at all times said bank, through its trust department, handled the active management of the estate, kept all records, received and disbursed all funds, merely calling upon the said Margaret E. Brand for her signature whenever the same was necessary.

In the agreed statement of facts, the exact findings are as follows: "On numerous occasions *during the period of approximately two years* prior to the beginning of the liquidation of the *North Carolina Bank and Trust Company,* Robert A. Brand, Jr., one of the legatees under his father's will, acting on behalf of himself and of his mother and the other beneficiaries under said will, consulted the trust officer of the *North Carolina Bank and Trust Company* at Wilmington and *urged the sale* of said stock and a *reinvestment of the proceeds* therefrom in Government Bonds or other similar securities, *but said trust officer,* who had assumed the active management of said estate on behalf of said bank, stated to the said Robert A. Brand, Jr., *that said stock was a good*

*and safe investment and should be retained, and in spite of protests by
the said Robert A. Brand, Jr.,* on behalf of himself, his mother, and the
other beneficiaries under his father's will, *said trust officer, acting on
behalf of said bank, declined to sell or dispose of said stock."*

In the main opinion, the cases cited and relied on by the Commissioner of Banks do not touch the equitable defense of the widow and
infant beneficiaries under the will of R. A. Brand. In fact, no case in
the main opinion deals with the factual situation in the present case. I
think the cases of *Hood, Comr., v. Martin,* 203 N. C., 620, and *Hood,
Comr., v. Paddison,* 206 N. C., 631, are applicable to the facts on the
present record.

In the *Paddison case, supra,* pp. 634-5, it is said: "The defendant,
as a defense, alleged and set up actionable fraud on the part of the president of the bank, in the purchase of the stock. Whatever may be the
English decisions and some of the American decisions, this Court has
held that actionable fraud, if shown, is a good defense. In *Chamberlain v. Trogden,* 148 N. C., 139 (140-1), speaking to the subject, citing
numerous authorities, is the following: 'There is some conflict of
authority as to the right of the subscriber to rescind his subscription or
maintain a defense to his obligation therefor on the ground of fraud,
after the corporation has become insolvent and its affairs have passed
into the possession and control of a receiver of the bankruptcy court, or
other method of general adjustment, primarily for the benefit of creditors. The English cases and some courts in this country have held that,
under conditions indicated, it is no longer open to the subscriber to maintain such a defense. These English decisions, however, are said to be
based to some extent on the construction given to certain legislation on
the subject, and the weight of authority in this country seems to establish that, under exceptional circumstances, the subscriber may avail
himself of the position suggested even after insolvency. . . . All of
the authorities, however, are to the effect that, in order to do so, the
subscriber must act with promptness and due diligence, both in ascertaining the fraud and taking steps to repudiate his obligation.' The
president of the bank has authority to make the alleged contract. *Warren v. Bottling Co.,* 204 N. C., 288 (290)."

The cases cited by defendant are also in point: *Rutledge v. Stackley,*
162 S. C., 173, 160 S. E., 429; *Mobley v. Phinizy* (Ga. App.), 155
S. E., 73.

The question involved: More than two years before the liquidation of
the *North Carolina Bank and Trust Company,* a stockholder in said
bank died, leaving a last will and testament, in which he appointed the
*North Carolina Bank and Trust Company* and his widow as executors.
In the will, the *corpus* of his estate is devised to his minor grandchildren.

As a part of his estate, there comes into the hands of his executors (who afterwards qualified as trustees), five hundred shares of *North Carolina Bank and Trust Company* stock, the *North Carolina Bank and Trust Company* as executor and trustee, although urged to do so by the devisees under the will, refused to sell said stock and reinvest the proceeds, but retained the stock until the liquidation of the bank. Is the estate of the minors liable for the statutory stock assessment? I think not, under the facts and circumstances of this case.

In *Stroud v. Stroud,* 206 N. C., 668 (671), it is said: "It is well settled as the law of this State and elsewhere that neither an executor, an administrator, nor a guardian is an insurer of the assets of the estate committed to his custody and care. In *DeBerry v. Ivey,* 55 N. C., 370, it is said: 'An executor, like other trustees, is not an insurer, nor to be held liable as such in taking care of the assets which come into his hands, nor in collecting them. He is answerable only for that *crassa negligentia,* or gross neglect, which evidences bad faith. The estates of deceased persons are deeply concerned in the existence of such a principle. If an executor was put into the position of an insurer—answerable for any neglect, however slight—unprotected by an honest endeavor to perform his duties, honest and reasonable men would rarely be found willing to incur the responsibility; and those only would incur it who calculated possible gain and loss.' See *Thigpen v. Trust Co.,* 203 N. C., 291, 165 S. E., 720."

Was the *North Carolina Bank and Trust Company* guilty of "gross negligence, which evidences bad faith?" I think so, under the findings of fact in this action. The stock totalling $5,000 was in the North Carolina Bank and Trust Company and the *North Carolina Bank and Trust Company* was one of the executors and trustees of the will of R. A. Brand, Sr. The trust officer of the bank assumed the active management of the estate. The *North Carolina Bank and Trust Company* knew, or in the exercise of ordinary care should have known, the condition of the bank. For a period of approximately 2 years prior to the liquidation of the bank, on numerous occasions, Robert A. Brand, Jr., one of the legatees under his father's will, and acting on behalf of himself and his mother, one of the executors and trustees, and the other beneficiaries of the will, consulted and urged the *trust officer* to sell the stock in the *North Carolina Bank and Trust Company,* and to reinvest the proceeds therefrom in Government Bonds or other similar securities. The *trust officer,* who knew, or in the exercise of due care should have known, the condition of the bank, stated to Robert A. Brand, Jr., representing the other executor and trustee, his mother, and the beneficiaries under his father's will, that the stock was a good and safe investment and should be retained, and *in spite of the protests,* the *trust officer,* acting on behalf of the bank, declined to sell or dispose of the stock.

13—209

Under these facts, should this widow and the children and grandchildren, minors, under the will of Robert A. Brand, Sr., not only lose the $5,000 in the *North Carolina Bank and Trust Company,* but also be assessed an additional $5,000? I do not think so.

"Equity looks upon that as done which ought to have been done. 1 Story Eq. Jur., sec. 64 G. Equity will treat the subject matter, as to collateral consequences and incidents, in the same manner as if the final acts contemplated by the parties had been executed exactly as they ought to have been; not as the parties might have executed them," citing numerous authorities. Black's Law Dictionary, 3d Edition, page 675.

"No man can serve two masters: for either he will hate the one, and love the other, or else he will hold to the one and despise the other. Ye cannot serve God and mammon." Matthew, 6th chapter, 24th verse.

The *North Carolina Bank and Trust Company,* in its dual capacity, looking solely to the interest of its bank, was grossly negligent, evidencing bad faith, in its duty as executor and trustee, in not selling the stock, and it thus caused the loss. The plaintiff Commissioner of Banks, when he took charge of the *North Carolina Bank and Trust Company,* took it *cum onere,* and had no authority under the provisions of N. C. Code, 1931 (Michie), sec. 218 (c), subsec. 13, to levy the stock assessment. The wrong was done—gross negligence and bad faith were shown—when plaintiff took charge of the bank, and plaintiff, in good conscience and fair dealing, is estopped to make this assessment.

In 92 A. L. R., p. 463-4, it is said: "And it has been held, also, that an administrator, who, as director of a bank, has opportunity, and owes a duty, to inform himself as to its financial condition, cannot excuse his negligence in retaining stock of the bank for nearly four years, up to the time of its failure, without making any attempt to dispose of it, although he holds the stock as an asset of the estate, on the advice of a guardian and mother of infant beneficiaries that it should be so allowed to remain."

"*Mills v. Hoffman* (1883), 92 N. Y., 181. The Court pointed out that the duty of administering the estate was upon the administrator, and not upon the guardian or mother of the infants, and that it was not claimed that they had any knowledge or means of ascertaining the true condition of the bank.

"And the facts that the testatrix in a letter, the contents of which are communicated to her executor, has indicated a desire not to have any of her securities changed and a purpose of purchasing long-term securities with this object in view, and that the party communicating this information to the executor, a daughter of the testatrix and a life beneficiary, expresses a similar desire not to have the securities changed, will not, it seems, relieve the executor from responsibility for loss resulting

from retention of such securities and investment thereof in proceeds authorized by law. See *Wotton v. DeReau* (1901), 59 App. Div., 584, 69 N. Y. S., 753 (affirmed without opinion in 1901), 167 N. Y., 629, 60 N. E., 1123.

"But if a majority of the beneficiaries request a sale of stock by the personal representative, this fact may, it seems, require prompt action on his part. It appears that in *Hiddingh v. Denyssen* (1887), L. R., 12 App. Cas. (Eng.), 624—P. C., in which executors were held responsible for failure for about eighteen months to dispose of shares of stock belonging to the estate (it being held that six months would be a reasonable time for them to sell the shares), those interested in the estate had, about the close of the six-months period, requested the executors to dispose of the stock. The view was taken that the executors, having been called upon by the major portion of the heirs to do as soon as possible the duty which the law laid upon them, were bound to delay no longer.

"And an administrator has been held liable for failure to sell speculative securities when requested to do so by a preferred distributee, even though his delay in doing so was due to the insistence of secondary distributees who hoped to secure a better price by a later sale.

"In the reported case (*Re Mellier* [Pa.], *ante,* 430), where the decedent's estate consisted of speculative securities, and an agreement was entered into among those claiming the estate by which one of the claimants was entitled to payment of a certain sum in satisfaction of her claim, it was held that the administrator could not, except at his own risk, refuse to comply with the demand of such claimant, as preferred distributee, that he sell the securities which were declining in value on the market, in order to realize funds for payment of the amount to which she was entitled, although his refusal to sell, or delay in selling, was due to objection on the part of the secondary distributees, who insisted that the securities should be held in the hope of a later rising market, which might give them a share, or an increased share, in the estate, after payment of the preferred distributee. So that, where the securities were finally sold for less than the amount required to pay the preferred distributee, the administrator was surcharged with the value of the securities belonging to the estate as of the date when demand was made by such distributees for their sale."

N. C. Code, 1931 (Michie), ch. 78, Trustees, Art. 1, sec. 4018, 4018 (a), makes provision for trustees, guardians, executors, administrators and others acting in a fiduciary capacity to invest surplus funds in certain securities, and are protected in so doing.

In Perry on Trusts & Trustees, 7th Edition, Vol. 1, sec. 465, in part, it is said: "If no directions are given in a will as to the conversion and investment of the trust property, trustees, to be safe, should take care to

invest the property in the securities pointed out by the law. It is true that a testator during his life may deal with his property according to his pleasure, and investments made by him are some evidence that he had confidence in that class of investments; but, in the absence of directions in the will, it is more reasonable to suppose that a testator intended that his trustees should act according to law. Consequently, in states where the investments which trustees may make are pointed out by law, the fact that the testator has invested his property in certain stocks, or loaned it on personal security, will not authorize trustees to continue such investments, even though requested to do so by the beneficiary, beyond a reasonable time for conversion and investment in regular securities, and what is a reasonable time must depend upon the circumstances of each party in the case."

From the facts in this case, I do not think that N. C. Code, 1931 (Michie), sec. 219 (c), or *Corporation Commission v. McLean,* 202 N. C., 77, contrary to the positions here taken.

The plaintiff in its brief says: "And notwithstanding the request for a sale of the stock, it appears that the stock was permitted to remain upon the bank's records in the name of the estate, without any effort being made to force a sale by appealing to the courts for relief." It was the *duty* of the *North Carolina Bank and Trust Company* to sell without the beneficiaries appealing to the court. The beneficiaries, for two years, made urgent requests and in spite of same, the *North Carolina Bank and Trust Company* refused to sell. It is responsible alone for the consequences and should not be allowed to take advantage of its own wrong.

The *North Carolina Bank and Trust Company,* acting in a dual capacity, under the facts disclosed in this case, was subjected to the imperative duty of selling said stock.

> "If self the wavering balance shake,
>   It's rarely right adjusted."—ROBERT BURNS.

While a trustee who holds bank stock subject to assessment is relieved of personal liability thereon, and creditors have the right to collect the assessment out of the assets of the trust, such trustee loses his right to exemption "if he retains stock when he should convert it, and thereafter assessment is made." Bogert: "The Law of Trusts and Trustees," Vol. 3, p. 2146, sec. 720. In such a case a different principle applies, and, as between the trustee and the *cestui que,* the trustee should bear the assessment, because of his breach of trust. Bogert, *supra.*

It may be conceded that the relationship between the trustee and the bank was known to the stockholders, that such relationship was contractual, and if the trustee is solvent that he is liable, for the faithless-

ness of the trustee is not denied, but that is not the point at issue here. The question is whether the trust-fund doctrine can be used to take from the defendants, through the wrong of the trustee bank, that its creditors may have more. No equity can be founded upon a wrong. It is obvious that a beneficiary cannot be held responsible for the acts of a faithless trustee. If it appear to be a hardship to creditors that they are without remedy, as regards an insolvent trustee, the answer is that the hardship is no more than would be the case with any other insolvent holder of bank stock. The position of creditors is the same in any event, but to hold that the beneficiaries of a trust estate, in the face of a negligent trusteeship, must be made to suffer because of his faithlessness, rather than creditors, would be to set at naught equitable principles that are fundamental in our law. Upon this altar the defendants are to be sacrificed for the benefit of the bank's creditors. Has not the solicitude for creditors thus reached the stage of a "Vaulting ambition, which o'erleaps itself, and falls on the other?" (Shakespeare—Macbeth.)